## STATE v. A. H. GOSSETT.

(Filed 7 December, 1932.)

**Husband and Wife A a: C c — Resumption of conjugal relationship ordinarily rescinds deed of separation.**

> Where the husband and wife duly execute a deed of separation stipulating that the parties had agreed to live separate and apart from each other for the remainder of their lives, and thereafter the husband visits the wife on several occasions and renews the conjugal relationship on each visit the deed of separation is rescinded by the acts of the parties themselves, and the deed of separation is no defense to a prosecution of the husband for abandonment and nonsupport of the wife.

CRIMINAL ACTION, before *Shaw, Emergency Judge,* at July Term, 1932, of GUILFORD.

The defendant was indicted for abandonment and nonsupport of his wife. At the trial in the Superior Court he pleaded not guilty. The wife of defendant testified that they were married in 1927 and lived together until 30 January, 1932. She said: "Mr. Gossett was out at another house with another girl. I saw him when he came out with the girl and got in the car. He came home and of course he was mad with me, and we could not agree for three weeks after that, and he asked me to give him separation papers. In fact, he said he was not ever going to live with me any more . . . and I might as well give him separation papers, and I asked him just what would become of me and

21—203

the baby, and he said he would take care of us." The State's witness
further testified that the defendant came after her and took her to the
office of an attorney in Greensboro. After the separation agreement was
completed it was submitted to Mrs. Gossett and she said: "I started
reading mine, and I was crying, of course, and I got down to some-
thing about some kind of support. I really do not understand the
papers."

After the agreement was signed the wife sold her living-room suit for
$10.00 and used the money to pay house rent. At the time of signing the
defendant gave his wife $2.00, and afterwards bought groceries amount-
ing to $2.25. He also gave her $4.00 with which to buy a pair of shoes.
The separation agreement was dated 30 January, 1932, and recites the
marriage and the birth of a child named Harold Gossett, who was
then four years of age, and continues as follows: "Whereas, the parties
hereto have mutually agreed upon an immediate separation and do
hereby agree to live separate and apart during the remainder of their
lives, being moved so to do for adequate reasons and not for mere voli-
tion or caprice, but because it is essential to their health and happiness
as aforesaid," etc. Each party released the other from all interest in
real or personal property, and the mother was to have the care, custody
and control of the child, and the father was to have the privilege of
visiting the child. The separation agreement was duly executed as
provided by law:

The wife testified that after the separation agreement was signed
that the defendant, her husband, visited her and had sexual intercourse
with her on the occasion of each visit. She said: "I did that because
I knew if I did not submit to him he would not come back and he would
not give me anything." There was further evidence that the wife was
a woman of good character, and that neighbors and friends had con-
tributed to her support, as she was destitute. The warrant was issued
on 22 February, 1932. At the trial the defendant relied upon the
separation agreement as a defense to the crime charged. There was a
verdict of guilty, and from judgment pronounced thereon, sentencing
the defendant to the roads for a period of twelve months, he appealed.

*Attorney-General Brummitt and Assistant Attorney-General Seawell
for the State.*

*A. C. Davis and Shelley B. Caveness for defendant.*

BROGDEN, J. If a separation agreement is duly executed by a husband
and wife, and thereafter the husband visits the wife from time to time,
and upon each visit resumes the conjugal relationship, does such con-
duct invalidate the agreement?

Separation agreements, while not favored by our law, have been generally upheld when properly executed. The general principle governing the validity of such agreements, is thus expressed in *Taylor v. Taylor,* 197 N. C., 197, 148 S. E., 174: "It seems to be unquestioned that a separation agreement must be untainted by fraud, must be in all respects fair, reasonable and just, and must have been entered into without coercion or the exercise of undue influence, and with full knowledge of all the circumstances, conditions, and rights of the contracting parties." Moreover, the effect of the resumption of the conjugal relationship between the parties after an agreement has been duly executed, has been discussed in several decisions, notably: *Smith v. King,* 107 N. C., 273, 12 S. E., 57; *Archbell v. Archbell,* 158 N. C., 408, 74 S. E., 327; *Moore v. Moore,* 185 N. C., 332, 117 S. E., 12; *S. v. McKay,* 202 N. C., 470, 163 S. E., 586.

In the *Smith case, supra,* it was said: "The law, if it recognizes, does not favor, articles of separation, and will not so construe them as to be valid after the parties have themselves canceled the agreement to separate by cohabiting together, unless it appear in the deed plainly that such separate support is to be continued, notwithstanding any future reconciliation and cohabitation." In the *Archbell case* the Court declared: "It is further established that if the parties resume the conjugal relations the agreement will be rescinded." The same general assertion appears in the *Moore case* in these words: "We need not discuss this proposition, however, for it has been definitely decided that if the parties resume the conjugal relation the agreement is thereby rescinded."

The heart of the separation contract is contained in the declaration therein: "And do hereby agree to live separate and apart during the remainder of our lives." Notwithstanding, the defendant continued to visit the wife, to contribute pittances to her support, and upon each visit, to resume sexual relationship. The trial judge, upon this aspect of the case, charged the jury as follows: "The court instructs you, gentlemen of the jury, that if the defendant did that, if after this deed of separation was entered into and before this warrant was sworn out, if he came back to see his wife and on each occasion had sexual intercourse with her, as testified by his wife, then the court instructs you, gentlemen of the jury, that this deed of separation became of no validity at all. When a husband and wife enter into a deed of separation the policy of the law is that they are to live separate, that they are not to keep up the sexual relation and continue that, but that they are to live separate and apart, and if after the deed of separation is entered into a man goes to see his wife and child, and every time he goes to see her he has sexual intercourse with her, the deed of separation is of no

validity at all, it becomes set aside, and the court instructs you, if you find the facts to be true, that this man visited his wife and child after this deed of separation was entered into and before this indictment or warrant was taken out, if you find that to be true, that he came to see her, and that every time he came to see her they had sexual intercourse, then the court instructs you to disregard entirely the evidence about the deed of separation, because, if that would be true, the parties themselves would disregard it and cannot expect the court to regard it if they did not regard it, and the obligations assumed in the contract would all be released from the parties and the rights of the husband and wife and the duties and obligations would be reimposed upon the parties."

The defendant assigns the foregoing instruction for error, contending that the law therein contained was stated too broadly, for that it has never been held that the mere resumption of sexual relation is sufficient to invalidate a deed of separation. There is ample support in the books justifying the defendant's exception, but this Court is constrained to uphold the view of the law so expressed by the trial judge; otherwise, the separation agreement would degenerate into a mere cloak or device by means of which the husband would escape the responsibilities imposed by the marital status and yet be free to partake of such privileges as he chose to enjoy. Manifestly it is not to be assumed that the law would protect the integrity of the agreement and yet thereby sanction and approve, for all practical purposes, illicit intercourse and promiscuous assignation.

The separation agreement constituted the sole defense to the crime charged in the warrant, and it necessarily follows that after the agreement has been treated by the parties as a "mere scrap of paper" and set at naught by their conduct, then it no longer avails.

No error.