WENDELL HOLMES MURPHY, SR. v. EMILY WYNELLE MURPHY

No. 37

(Filed 14 July 1978)

**Husband and Wife § 12— separation agreement—resumption of sexual relations—agreement rescinded**

> Sexual intercourse between a husband and wife after the execution of a separation agreement avoids the contract, and this is true whether the resumption of sexual relations be "casual," "isolated," or otherwise.

Justice Exum concurring in part and dissenting in part.

DEFENDANT appeals from the decision of the Court of Appeals finding "no error" in the judgment of *Crumpler, J.,* entered 17 June 1976 in the District Court of Duplin County. The opinion of *Clark, J.,* with *Brock, J.,* concurring and *Martin, J.,* dissenting, is reported in 34 N.C. App. 677, 239 S.E. 2d 597 (1977).

On 8 August 1973 plaintiff, Wendell Holmes Murphy, Sr., instituted this action for divorce, based on one year's separation, against his wife, defendant Emily Wynelle Murphy. The complaint, in brief summary, alleged:

The parties were married on 23 May 1958 and lived together until 1 March 1972. Since that date plaintiff and defendant have lived continuously separate and apart, at no time having resumed the marital relation which formerly existed between them. To the marriage of plaintiff and defendant were born two children, Wendell Holmes Murphy, Jr., born 23 April 1964, and Wendy Deanne Murphy, born 20 December 1968. The parties settled the custody and support of these children by deed of separation executed on 4 March 1972.

In her amended answer and counterclaim defendant admitted that the parties separated on 1 March 1972 and executed a deed of separation on 4 March 1972. However, she also alleged that, after June of 1972 and continuing through April or May of 1973, plaintiff and defendant "resumed their marital relationship" by having intercourse with one another and that they thereby rescinded the deed of separation. In addition, defendant alleged that the deed of separation should be set aside because, at the time of its execution, plaintiff had not properly informed her of his assets. Defendant further averred that she is the dependent spouse, unemployed, and with no income whatsoever; that plaintiff has willfully failed to provide her with necessary subsistence and, by his conduct, has offered such indignities to her person as to render her condition intolerable and her life burdensome.

Defendant prayed that plaintiff's claim for relief be denied; that the deed of separation between the parties be declared void; that she be awarded custody of the children of the marriage; and that she be granted alimony and child support.

At the beginning of the trial, pursuant to N.C.G.S. 1A-1, Rule 42(b) (1969), Judge Crumpler allowed plaintiff's motion to sever plaintiff's action for divorce from defendant's cross-action to set aside the deed of separation. In consequence, only two issues were submitted to the jury and they were answered as follows:

"1. Was the separation agreement and property settlement dated March 4, 1972, a valid separation agreement when executed? Answer: YES.

"2. If so, was the separation agreement and property settlement dated March 4, 1972, terminated by the acts and conduct of the plaintiff and defendant? Answer: NO."

From the judgment entered upon the verdict declaring the deed of separation to be "in all respects a valid and existing separation agreement," defendant appealed to the Court of Appeals and from its decision to this Court as a matter of right under G.S. 7A-30(2).

*Vance B. Gavin, Russell J. Lanier, Jr., and William E. Craft, for plaintiff appellee.*

*Kornegay & Rice for defendant appellant.*

SHARP, Chief Justice.

Defendant's evidence on the first issue, which the trial judge deemed sufficient to go to the jury on the question whether the separation agreement was obtained by plaintiff's fraud or undue influence, is sufficiently set out and discussed in the opinion of the Court of Appeals. We affirm that Court's decision that the judge committed no prejudicial error in his rulings and instructions on the first issue and that the evidence supports the jury's verdict on that issue. However, defendant's assignment of error No. 10, which challenges the judge's instruction on the second issue, must be sustained for the reasons hereinafter set out.

Defendant's testimony with reference to the relationship between plaintiff and herself after the execution of their separation agreement is summarized and quoted below:

After March 1972 defendant lived in a trailer in Chinquapin and plaintiff lived in a trailer behind the office of Murphy Mills Company. "Within the immediate year after the separation agreement," plaintiff called her "many times" asking her to come to his trailer, which she did. On most of those occasions they discussed "getting back together." Defendant testified, "On some of those occasions he did ask me to go to bed with him. . . . I went to bed with him at the trailer after the separation agreement and had intercourse with him numerous times. I don't really know (how many times)." Plaintiff also went to defendant's trailer " a couple of times after the separation agreement." On those occasions they talked about getting back together and she had "sexual relations with him." Several times she stayed with him at his trailer "practically all night and left early in the morning." During all those times they were still talking about getting back together.

Defendant further testified that after March 1972 she and plaintiff engaged in sexual intercourse at places other than their respective trailers. They "had sex" at their "place at the beach," and defendant once came to Kenansville while she was there working at the Farm Bureau office.

Under the terms of the separation agreement the parties' children spent alternate weekends together with first one parent and then the other. Defendant said that it was on some of those occasions when they "would alternate the children" that they had

sexual relations. However, she also testified, "We engaged in sexual intercourse on other occasions when not transporting the children from home to home. I didn't count the number of times I engaged in intercourse with him altogether from the execution of the deed of separation. I would not even venture a guess, numerous times. I am sure more than a dozen times. Certainly at least two dozen, probably more."

Defendant began attending Campbell College at Buies Creek in January of 1973 and remained there for a year and a half. During that time plaintiff visited her in her trailer where they had sex on more than one occasion. Defendant testified that the last time they had intercourse was at Buies Creek in the spring of 1973. On that occasion they "discussed getting back together." She testified, however, "He told me that he loved me, that he always would, but there was no way to go back. He told me that on other occasions prior to then."

In his testimony plaintiff readily admitted that after the execution of the separation agreement he had engaged in sexual intercourse with his wife. When asked to what extent, he replied, "Several instances, not nearly as numerous as she suggested, but there were instances." He estimated "six or eight times," and said: "It was always when I carried on an exchange of the children. . . . I did not ever agree with her we would resume the marital relation. I always told her there was no way under the circumstances we could resume our relationship. I did not ever move any of my clothes into her house. She did not ever move any of her clothes or belongings into my house."

Plaintiff testified on cross-examination that he left his wife in January of 1972 on the day her car remained parked from early morning until 9:00 p.m. in the yard of one Milton Parker. This one issue, he said, "is what our marital differences had been about over this whole period of time [the six-eight months before the separation]. . . ." When asked about his continued sexual relations with his wife after the execution of the separation agreement and when he knew "there was no way under the circumstances" that they could ever resume the marital relationship, plaintiff offered this explanation: "Wynelle and I had lived together nearly 14 years as husband and wife."

In response to questions about his visits to defendant at Buies Creek, plaintiff did not specifically recall going to defendant's trailer in April of 1973. However, he did say, "I went many times. I very well could have. I said I did (engage in sexual intercourse) as many as a half dozen times, as many as eight at her trailer at Buies Creek or at the trailer behind the office, the mill. We did have sexual intercourse six or eight times."

The second issue submitted to the jury posed the question whether the subsequent acts and conduct of the parties terminated their separation agreement of 4 March 1972.

It is established law that a separation agreement between husband and wife is terminated, insofar as it remains executory, upon their resumption of the marital relation. *In re Adamee*, 291 N.C. 386, 230 S.E. 2d 541 (1976). In *Adamee, supra,* we hold that when separated spouses have executed a separation agreement and thereafter resume living together in the same fashion as before their separation, in contemplation of law their action amounts to a resumption of marital cohabitation which rescinds their separation agreement. This is true irrespective of whether they had resumed sexual relations. *Id.* at 393, 230 S.E. 2d at 546.

The question now before us is whether a husband and wife who, after having executed a separation agreement and established separate abodes, continue to engage in sexual intercourse from time to time thereby rescind the agreement. Defendant's assignment of error No. 10 challenges the following instructions which the judge gave the jury on the second issue with reference to this specific question:

"Now in this connection I charge you that where a husband and wife enter into a separation agreement and thereafter become reconciled and renew the marital relations, the agreement is terminated for every purpose insofar as it remains executory. And the words "become reconciled and renew their marital relations' means not just a mere reconciliation or making up of the parties, but it means renewal and resumption of the marital relations, *and this would require something more than sexual intercourse alone.* It's essential that there be a mutual intent to resume cohabitation. The word cohabitation in our law means something more than sexual intercourse between the parties.

Cohabitation ordinarily contemplates establishment of a home in which the parties live in the married relationship, normal relationship of husband and wife." (Emphasis added.)

And finally the trial judge charged, "Now here, the burden of proof is also on Mrs. Murphy to show you by the greater weight of the evidence that not only did they have sex together after the separation agreement, but that there was a mutual intent on the part of both to reconcile and resume their cohabitation."

The foregoing instructions find support in two prior decisions of the Court of Appeals, *Cooke v. Cooke*, 34 N.C. App. 124, 237 S.E. 2d 323 (1977), and *Newton v. Williams*, 25 N.C. App. 527, 214 S.E. 2d 285 (1975). In both these decisions the court held that mere proof of "isolated" or "mere casual acts of sexual intercourse" did not establish reconciliation and the resumption of marital relations. In reaching this conclusion the Court of Appeals relied upon the following statement in 1 R. Lee, *North Carolina Family Law* § 35, at 153 (3d ed. 1963): "Mere proof that isolated acts of sexual intercourse have taken place between the parties is not conclusive evidence of a reconciliation and resumption of cohabitation. There must ordinarily appear that the parties have established a home and that they are living in it in the normal relationship of husband and wife."[1] *See also* 2 R. Lee, *North Carolina Family Law* § 200 (3d ed. 1963).

That the foregoing statement is the general rule may be inferred from the decisions collected in the following annotations and the supplemental case services: Annot., 40 A.L.R. 1227 (1926); Annot., 35 A.L.R. 2d 707 (1954). However, this rule—be it "general" or limited—is not the law in North Carolina. The rule in this State was clearly enunciated by Justice Brogden, speaking for the Court in 1932 in the case of *State v. Gossett*, 203 N.C. 641, 166 S.E. 754. This case is cited in 42 C.J.S., *Husband and Wife* § 601, at 186 (1975), as authority contrary to the general rule that "mere casual acts of sexual intercourse are not conclusive evidence that the parties have ceased to live separate within the meaning of a separation agreement." In *Gossett*, the defendant was indicted for the abandonment and nonsupport of his wife. At

---

1. In a footnote to this statement (n. 105 at 153), the author says: "*But cf. State v. Gossett*, 203 N.C. 641, 166 S.E. 754 (1932), which was a criminal case involving a prosecution for abandonment and nonsupport and the effect of a separation agreement upon the same; the language in this case would seem to be applicable only to the facts of the particular case."

the trial the defendant contended that by executing a separation agreement his wife had released him from any obligation to support her. The wife testified, however, that after the separation agreement was signed her husband had visited her and they had engaged in sexual intercourse on each occasion. The number of times the defendant visited his wife is not disclosed in the opinion.

In pertinent part, Judge Thomas J. Shaw, the trial judge in *State v. Gossett, supra,* instructed the jury as follows: "When a husband and wife enter into a deed of separation the policy of the law is that they are to live separate, that they are not to keep up the sexual relation and continue that, but that they are to live separate and apart and if after the deed of separation is entered into a man goes to see his wife and child, and every time he goes to see her he has sexual intercourse with her, the deed of separation is of no validity at all . . . and the court instructs you, if you find that this man visited his wife and child after this deed of separation was entered into and before this indictment or warrant was taken out . . . and that every time he came to see her they had sexual intercourse, then the court instructs you to disregard entirely the evidence about the deed of separation because, if that would be true, the parties themselves would disregard it and cannot expect the court to regard it if they did not regard it, and . . . the rights of husband and wife and the duties and obligations would be reimposed upon the parties." *Id.* at 643-44, 166 S.E. at 755.

On appeal, defendant Gossett assigned the foregoing instruction as error. He contended that Judge Shaw had stated the law "too broadly," for it had never been held that the mere resumption of sexual relations invalidated a deed of separation.

Justice Brogden began the Court's opinion, which rejected the defendant's contentions, with the following question: "If a separation agreement is duly executed by husband and wife, and thereafter the husband visits the wife from time to time, and upon each visit resumes the conjugal relationship, does such conduct invalidate the agreement?" Before answering this question in the affirmative Justice Brogden wrote:

"There is ample support in the books justifying the defendant's exception, but this Court is constrained to uphold the view of the law so expressed by the trial judge; otherwise, the separa-

Murphy v. Murphy

tion agreement would degenerate into a mere cloak or device by means of which the husband would escape the responsibilities imposed by the marital status and yet be free to partake of such privileges as he chose to enjoy. Manifestly it is not to be assumed that the law would protect the integrity of the agreement and yet thereby sanction and approve, for all practical purposes, illicit intercourse and promiscuous assignation.

"The separation agreement constituted the sole defense to the crime charged in the warrant, and it necessarily follows that after the agreement has been treated by the parties as a 'mere scrap of paper' and set at naught by their conduct, then it no longer avails." *Id.* at 644, 166 S.E. at 755. *Cf.* 24 Am. Jur. 2d *Divorce & Separation* § 214 (1966) (one act of sexual intercourse between a husband and wife may constitute a condonation by the innocent spouse of the other's infidelity).

Albeit forty-six years have intervened since the decision in *Gossett,* this Court is still constrained to hold that sexual intercourse between a husband and wife after the execution of a separation agreement avoids the contract. We therefore reaffirm *State v. Gossett, supra,* and apply its rationale to this case. It is quite true, as plaintiff points out in his brief, that marriage involves many duties, responsibilities and activities other than sexual relations. *See Young v. Young,* 225 N.C. 340, 344, 34 S.E. 2d 154, 157 (1945). However, in the normal situation they are an integral part of marriage.[2] Indeed, severance of marital relations by a separation agreement and continued sexual intercourse between the parties "are essentially antagonistic and irreconcilable notions." 1 A. Lindey, *Separation Agreements and Ante-nuptial Contracts* §§ 8-13 (1977). In our view, this is true whether the resumption of sexual relations be "casual", "isolated", or otherwise. *See Weeks v. Weeks,* 143 Fla. 686, 197 So. 393 (1940); *Wolff v. Wolff,* 134 N.J. Eq. 8, 34 A. 2d 150 (1943); *Ahrens v. Ahrens,* 67 Okla. 147, 169 P. 486 (1917). Plaintiff's assignment of error No. 10 is sustained.

The foregoing ruling, of course, requires that the judgment in this case be vacated and the cause remanded for a new trial on the second issue prior to the trial of plaintiff's action for divorce

---

2. *See* 1 R. Lee, *North Carolina Family Law* § 87, at 332 (3d ed. 1963).

and defendant's cross-action for alimony and child custody. Presumably, however, in view of the admissions made by plaintiff husband in the course of his testimony at the trial, defendant wife will now move for summary judgment under G.S. 1A-1, Rule 56(c). Under this rule "any material that is on file that may properly be treated as an admission of a party may be considered on a motion for summary judgment." 6 Moore's Federal Practice, *Summary Judgment* § 56.11 [1.5], at 56-201 (1976). *See Ramsouer v. Midland Valley R. Co.*, 135 Fed. 2d 101 (8th Cir. 1943) (where a transcript of testimony taken at an earlier trial in an action dismissed without prejudice was used in support of a motion for summary judgment); *Singleton v. Stewart*, 280 N.C. 460, 186 S.E. 2d 400 (1972); C. Wright and A. Miller, *Federal Practice and Procedure* § 2723 (1973).

There remains to be considered only the questions raised by defendant's assignment of error No. 2 — whether the trial court erred in denying her motion to amend her amended answer by the addition of proposed paragraphs 12, 18, 19, and 22. These paragraphs (with the exception of No. 12, which would appear to be mainly evidentiary) contain the allegations constituting defendant's defense to plaintiff's claim for divorce and the substance of her claim for alimony without divorce. The Court of Appeals held that, in view of the severance of issues, the denial of this motion to amend "was not error because the matters alleged (no income, indignities to the person, and failure to provide subsistence) were not material to the single issue [then] before the court, the validity of the separation agreement." However, in view of the present posture of the case, defendant contends that the proposed amendments are now pertinent, and that her motion to amend should be considered *de novo* by the trial court. We agree with that contention and direct that, prior to the trial of plaintiff's action for divorce and defendant's cross-action for alimony without divorce, the trial judge shall reconsider defendant's motion to amend her pleadings as provided by Rule 15(a).

In summary, for the reasons previously stated, the decision of the Court of Appeals finding no error in the trial below on the first issue is affirmed; its decision finding no error as to the second issue is reversed, and a new trial is ordered as to that issue only. *Robertson v. Stanley*, 285 N.C. 561, 568, 206 S.E. 2d 190, 195 (1974); *Johnson v. Lewis*, 251 N.C. 797, 804, 112 S.E. 2d 512, 517

(1960); *Lumber Co. v. Branch,* 158 N.C. 251, 253, 73 S.E. 164, 165 (1911). Accordingly, this case is returned to the Court of Appeals for remand to the District Court for proceedings consistent with this opinion.

Affirmed in part; Reversed in part.

Error and Remanded.

Justice EXUM concurring in part and dissenting in part:

. I agree with the decision of the Court of Appeals and with the law in this area as it has been developed by that Court. *See Cooke v. Cooke,* 34 N.C. App. 124, 237 S.E. 2d 323 (1977); *Newton v. Williams,* 25 N.C. App. 527, 214 S.E. 2d 285 (1975). Therefore I vote to affirm. I disagree with the majority's conclusion that the trial judge's instructions on the second issue were erroneous. Insofar as *State v. Gossett,* 203 N.C. 641, 166 S.E. 754 (1932), relied on by the majority, is inconsistent with these conclusions I would consider it no longer controlling.