CAROLYN LEDFORD v. GILMER LEDFORD

No. 7930DC1148

(Filed 21 October 1980)

1. **Divorce and Alimony § 13.1– divorce based on year's separation – sexual activity and association negating separation**

   A couple cannot be granted a divorce on the ground of one year's separation if there has been sexual activity between the parties or if there has been such association between the parties as to induce others to regard them as living together.

2. **Divorce and Alimony § 13.5– divorce based on year's separation – issue as to living separate and apart – summary judgment improper**

   In an action for divorce based on a year's separation the trial court erred in entering summary judgment for defendant, since there was disputed testimony as to whether the parties had engaged in sexual intercourse during the period of separation, and since evidence that the parties had driven around town, eaten in restaurants and been to church together, and evidence that plaintiff visited the former marital home and cooked and cleaned up while there and that she set up a Christmas tree in the home amounted to evidence only of casual and isolated social acts which would not reasonably induce others to regard the parties as living together.

3. **Divorce and Alimony § 2.1; Rules of Civil Procedure §15– one year's separation – amendment of complaint to change date of separation – denial improper**

   In an action for divorce based on one year's separation where plaintiff sought to amend her complaint to change the date of the original separation, the trial court abused its discretion in denying the motion to amend, since no justifying reason was given for the denial; there was no showing of prejudice to defendant; and the denial was apparently based on a misapprehension of the law.

APPEAL by plaintiff from *Leatherwood, Judge.* Judgment and Order entered 17 July 1979 in District Court, MACON County. Heard in the Court of Appeals in Waynesville on 26 August 1980.

Plaintiff seeks an absolute divorce on the grounds of one year's separation beginning on 9 December 1977. Defendant's answer alleges that after 9 December 1977, the plaintiff continued carrying out her marital obligations by cleaning the house, preparing and cooking meals for the defendant, and washing his clothes; and that by going to restaurants together, and otherwise going out in public together they held themselves out as husband and wife. As a further defense, defendant alleges that the parties had sexual relations on 29 December

and 30 December 1977. Defendant filed a motion for summary judgment.

In support of his motion defendant in his affidavit avers that on 29 December and 30 December 1977, he and the plaintiff spent the night together in their home and had sexual relations. Further, the parties had sexual relations in June 1978 and October 1978. Defendant also states that for about ten months during the alleged period of separation, plaintiff came to their home two or three times per week to clean the house, prepare the defendant's meals, wash his laundry, and occasionally eat with him. The parties also ate together in public, visited neighbors and relatives in Georgia together, and otherwise held themselves out in public as husband and wife.

In plaintiff's affidavit and her deposition, both of which were considered by the trial judge on the summary judgment motion, she denies having sexual intercourse with her husband on 29 December or 30 December 1977, although she admits spending the night at their home because defendant was afraid he was having a heart attack. Plaintiff also denies that the parties had sexual relations in June or October 1978 as alleged by defendant in his affidavit. Plaintiff admits going to their house once or twice a month to clean, to cook for the defendant, and to wash his clothes. However, plaintiff maintains she performed these tasks because defendant promised he would move out of the house and allow her to live in it and she did not want to move into a dirty house. Moreover, after the parties' separation in December 1977, she continuously lived in her own apartment. Plaintiff acknowledges that she ate meals in restaurants with defendant on three occasions, that they took a trip to Georgia to visit his relatives, and that they attended a play at their church during the Christmas season of 1978, at which time defendant introduced the plaintiff to the pastor as his wife. Plaintiff also set up a Christmas tree and presents in their former marital home. Nevertheless, plaintiff asserts that during the period of the separation she never displayed any affection toward the defendant in public.

Before the hearing on summary judgment motion, plaintiff filed a motion to amend her complaint by changing the date of separation to 1 January 1978. The trial judge entered an order denying plaintiff's motion to amend her complaint and entering

summary judgment in defendant's favor, thereby dismissing plaintiff's suit with prejudice.

*Downs & Henning by James U. Downs for plaintiff appellant.*

*Louis Wilson for defendant appellee.*

CLARK, Judge.

The challenged ruling of the trial court in granting summary judgment for the defendant-husband should be affirmed on appeal only if the defendant in his supporting affidavit established as a matter of law that he and plaintiff-wife did not live separate and apart for one year as required by G.S. 50-6. Stated another way, the test is whether the defendant presented materials which would require a directed verdict in his favor if presented at the trial. W. Shuford, N.C. Civil Practice and Procedure § 56-7 (1975).

The facts as presented to the court in defendant's affidavit on the one hand and as presented in plaintiff's affidavit and deposition on the other hand are conflicting. Only if these questions of fact are immaterial would summary judgment be appropriate, because summary judgment is warranted only where no genuine issue of material fact exists. *Page v. Sloan,* 281 N.C. 697, 190 S.E. 2d 189 (1972); *Fitzgerald v. Wolf,* 40 N.C. App. 197, 252 S.E. 2d 523 (1979); G.S. 1A-1, Rule 56. In making this determination, the Court must view the evidence in the light most favorable to the non-movant. *Brice v. Moore,* 30 N.C. App. 365, 226 S.E. 2d 882 (1976).

[1] G.S. 50-6 allows the granting of a divorce on the basis of one year's separation. To grant defendant's motion, the trial judge must have concluded that the parties did not as a matter of law live separate and apart as the statute contemplates. Our case law delineates two circumstances under which the law will hold spouses to have failed to satisfy the requirements of a valid separation: first, sexual activity between the parties, *Murphy v. Murphy,* 295 N.C. 390, 245 S.E. 2d 693 (1978); and, second, such association between the parties as to induce others to regard them as living together, *In re Estate of Adamee,* 291 N.C. 386, 230 S.E. 2d 541 (1976).

Though both *Murphy* and *Adamee, supra,* deal with the validity of a separation agreement and not with the tolling of the period of separation required in G.S. 50-6, we believe that the following language in the *Adamee* opinion forestalls any doubt that the cases should apply as well to the "live separate and apart" words in G.S. 50-6:

> "The same public policy which will not permit spouses to continue to live together in the same home — holding themselves out to the public as husband and wife — to sue each other for an absolute divorce on the ground of separation or to base the period of separation required for a divorce on any time they live together, will also nullify a separation agreement if the parties resume marital cohabitation. Whether used in a separation agreement or a divorce statute, the words 'live separate and apart' have the same meaning. The cessation of cohabitation which provides grounds for divorce and the resumption of cohabitation which will abrogate a separation agreement are defined in the same terms."

291 N.C. at 391, 230 S.E. 2d at 545 (dictum).

[2] The *first circumstance* which would support the judge's granting of summary judgment in this case would be *undisputed* evidence of sexual activity between the parties. *Murphy v. Murphy,* 295 N.C. 390, 245 S.E. 2d 693 (1978). *See* Note, *Separation Agreements: Effect of Resumed Marital Relations,* 1 Campbell L. Rev. 131 (1979) [hereinafter *Separation Agreements*]; Survey, *Developments in North Carolina Law, 1978,* 57 N.C. L. Rev. 827, 1095-98 (1979); Note, *Isolated Acts of Sexual Intercourse Void Separation Agreements,* 16 Wake Forest L. Rev. 137 (1980) [hereinafter *Isolated Acts*]. In *Murphy, supra,* Justice Sharp wrote for the Court that "severance of marital relations by a separation agreement and continued sexual intercourse between the parties are essentially antagonistic and irreconcilable notions." *Murphy v. Murphy,* 295 N.C. at 397, 245 S.E. 2d at 698. In light of the foregoing quote from *Adamee,* it is to be expected that the trial judge would understand the *Murphy* rationale to suggest that acts of sexual intercourse would not only void a separation agreement but would also toll the statutory period for divorce. *See* Note, *Separation Agreements,* 1 Campbell L. Rev. at 139-40; Note, *Isolated Acts,* 16 Wake Forest.

L. Rev. at 149. The testimony of the plaintiff, however, was that no intercourse occurred between her and her husband during the period of separation. A jury might well believe her testimony. Indeed, the judge was required to believe this testimony for the purpose of ruling on the motion for summary judgment. *Brice v. Moore, supra.* Absent sexual intercourse, the *Murphy* rationale has no applicability to this case and reliance upon sexual intercourse between the parties as grounds for summary judgment, in light of plaintiff's evidence to the contrary, would be error by the trial judge.

The *second circumstance* which would support the granting of the summary judgment would be an association between the parties "of such character as to induce others who observe them to regard them as living together in the ordinary acceptation of that descriptive phrase." *In re Estate of Adamee, supra; Dudley v. Dudley,* 225 N.C. 83, 33 S.E. 2d 489 (1945). The *Adamee* court, per Justice Sharp, stated:

> "We hold that when separated spouses who have executed a separation agreement resume living together in the home which they occupied before the separation, they hold themselves out as man and wife 'in the ordinary acceptation of the descriptive phrase.'"

*Adamee,* 291 N.C. at 392, 230 S.E. 2d at 546. Under this second approach the summary judgment would be warranted if all the evidence considered in the light most favorable to plaintiff established as a matter of law that sometime after the separation of the parties they resumed living together or in some manner "held themselves out as husband and wife living together." *Adamee, supra; Dudley v. Dudley, supra.*

The affidavit and deposition of the plaintiff tend to show that over the course of more than a year plaintiff:

> (1) Drove around town with defendant on a few occasions;

> (2) Drove to Georgia with defendant on two occasions;

> (3) Approximately twice a month, during half of this period (May to November 1978), visited defendant at their former marital home and while at the house cleaned up and cooked;

(4) Ate at restaurants with defendant on three occasions;

(5) Set up a Christmas tree in the former marital home during December 1978;

(6) On one occasion attended the Prentiss Baptist Church with defendant;

(7) While leaving the church on that occasion failed to protest when defendant referred to her as his wife;

(8) Slept with defendant on the night of 29 December 1977, although they did not engage in sexual activity.

The trial judge apparently viewed these facts as establishing as a matter of law that the parties had not lived "separate and apart" in that they held themselves out to the public as husband and wife.

Considering the first seven of the above listed activities, we see nothing that would warrant finding as a matter of law that the parties held themselves out as man and wife. The acts listed appear to be isolated or occasional and not of a character to be inconsistent with the parties' status as separated spouses. It is true that *Murphy* held sexual intercourse between the parties to be inconsistent with the notion of separation "whether the resumption of sexual relations be 'casual', 'isolated', or otherwise," *Murphy v. Murphy*, 295 N.C. at 397, 245 S.E. 2d at 698; but we believe that casual and isolated social acts together must be viewed differently. As pointed out in *Murphy*, to allow sexual activity outside the cloak of marriage would be to "'sanction and approve, for all practical purposes, illicit intercourse and promiscuous assignation.'" *Id.*, quoting *State v. Gossett*, 203 N.C. 641, 644, 166 S.E. 754, 755 (1932). There is nothing illicit, however, about casual social intercourse between separated spouses. Indeed, in a state which "recognize[s] and adhere [s] ... to a policy which within reason favor[s] maintenance of ... marriage[s]," *Gardner v. Gardner*, 294 N.C. 172, 180, 240 S.E. 2d 399, 405 (1978), it would appear beneficial to encourage the sorts of social contact which are necessary for spouses to reconcile their differences and effect a meaningful reconciliation. In light of the nature of these activities and their relative infrequency over an extended period of time, we see no way they

could reasonably induce others to regard the parties as living together. We note in contrast that cases denying divorce or voiding separation agreements have uniformly required much more substantial activity to find a holding out as living together. *See In re Estate of Adamee, supra,* (wife moved back into marital domicile and lived with husband for eight months); *Dudley v. Dudley, supra,* (evidence showed spouses had slept in the same room for two and one-half to three years and in adjoining rooms in the same house for the remainder of the alleged five years' separation); *Young v. Young,* 225 N.C. 340, 34 S.E. 2d 154 (1945) (although husband was in the Navy, the parties stayed together whenever the husband was on leave or stationed near the marital home). We hold, in accord with our earlier holding in the case of *Tuttle v. Tuttle,* 36 N.C. App. 635, 244 S.E. 2d 447 (1978), that, "interruption of the statutory period should not be found ... from the mere fact of social contact between the parties." *Id.* at 636-37, 244 S.E. 2d at 448.

**[3]** The eighth, and only remaining, circumstance upon which the trial judge might have based his ruling for defendant on the summary judgment motion was the incident on 29 December 1977 when plaintiff and defendant spent the night together in their former marital home. Plaintiff, however, filed a timely motion to amend her complaint for the purpose of eliminating this incident and having the period of separation begin on 1 January 1978. Had this motion been granted, the night the parties spent together would have been outside the period of separation and not subject to consideration on the summary judgement motion. Plaintiff assigns as error the trial judge's denial of her motion to amend her complaint.

Rule 15(a), N.C. Rules Civ. Proc. mandates that after expiration of the time for amendment as of right, "a party may amend his pleading only by leave of court ... and leave shall be freely given when justice so requires." This language in our rule is identical to that of its federal counterpart, Fed. R. Civ. Proc. 15(a). *See* W. Shuford, N.C. Civil Practice and Procedure § 15-1 (1975). With regard to the Federal Rule, the United States Supreme Court has stated:

> "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed

Ledford v. Ledford

1948), ¶¶ 15.08, 15.10. If the underlying facts or circumstances relied upon by plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."

*Foman v. Davis,* 371 U.S. 178, 181-182, 83 S. Ct. 227, 9 L. Ed. 2d 222, 226 (1962); *see Public Relations, Inc. v. Enterprises, Inc.,* 36 N.C. App. 673, 245 S.E. 2d 782 (1978); *Gladstein v. South Square Association,* 39 N.C. App. 171, 249 S.E. 2d 827 (1978). Just as the language in the Federal and North Carolina Rules is identical on this point, so are the policies behind the rules the same, i.e., "to insure, so far as is just to the opposing party, that every case be decided on its merits." *Gladstein, supra,* at 178, 249 S.E. 2d at 831.

In the case *sub judice* the trial court did not set out a justifying reason for denying plaintiff's motion to amend and no such reason appears in the record on appeal. The United States Supreme Court has held that the trial judge abuses his discretion when he refuses to allow an amendment unless a justifying reason is shown. *Foman v. Davis, supra.* Nor does the record reveal any attempt on the part of the defendant to show that he would be prejudiced by the amendment. The burden is on the objecting party to show that he would be prejudiced thereby. *Vernon v. Crist,* 291 N.C. 646, 231 S.E. 2d 591 (1977) (dictum); *Public Relations, Inc. v. Enterprises, Inc.,* 36 N.C. App. 673, 245 S.E. 2d 782 (1978). It must be concluded that the ruling of the trial court in denying the motion to amend is based on a misapprehension of the law, that the circumstances (listed 1-7 above) were sufficient as a matter of law to warrant summary judgment for defendant rendering the amendment futile. We

conclude that the denial of the motion to amend without a justifying reason and no showing of prejudice to defendant, and apparently based on a misapprehension of the law, was an abuse of discretion and reversible error.

It should not be inferred from this ruling on the amendment question that summary judgment for defendant would have been justified solely on the admission by plaintiff that she spent the night with the defendant in the marital home on 29 December 1977. Our ruling on the amendment issue obviates the need for considering and ruling on that question.

The summary judgment for defendant and the order denying plaintiff's motion to amend are vacated and this cause is remanded for proceedings consistent with this opinion.

Vacated and Remanded.

Chief Judge MORRIS and Judge MARTIN (Harry C.) concur.