## CIRCUIT COURT OF THE CITY OF ALEXANDRIA

Knight

    v.

Knight

April 6, 1981

Case No. (Chancery) 11601

### By JUDGE ALBERT H. GRENADIER

This matter came on to be heard February 21, 1981, upon the motion and notice of the defendant and cross-complainant for the entry of a final decree. The controversy between the parties involves three matters. The plaintiff and cross-defendant first claims that the defendant and cross-complainant is not entitled to a divorce on the ground of desertion and that he should be awarded a final decree on the ground that the parties have lived separate and apart without interruption and without any cohabitation for more than one year. The plaintiff and cross-defendant further contends that the Separation Agreement of March 22, 1979, was abrogated by a subsequent reconciliation and resumption of marital cohabitation by the parties. And finally, the plaintiff and cross-defendant claims that the escalator clause contained in paragraph 5 of the Separation Agreement is void.

It is without question that the Separation Agreement was intended to be governed and construed by the laws of the State of North Carolina. Paragraph 17 of

the Agreement so states. Such provisions in agreements are usually held to be valid and binding on the parties. When the parties to an agreement express an intent in the agreement of what law is to govern, the court will construe the agreement in accordance with that intent. *Tait v. Hain,* 181 Va. 402 (1943). The fact that the Agreement was actually executed in New Jersey is of no particular consequence. Whether or not the Separation Agreement was abrogated by the subsequent conduct of the parties must also be governed and construed by North Carolina law.

Generally, North Carolina follows the rule that where a reconciliation and resumption of marital cohabitation has taken place, a prior order or separation agreement with provisions for future support and an agreement to live apart is necessarily abrogated. See *Hester v. Hester,* 79 S.E.2d 248, 251 (N.C. 1953); *Hand v. Hand,* 264 S.E.2d 597, 598 (N.C. App.) *cert. denied* 270 S.E.2d 107 (N.C. 1980).

Prior to the decision in *Murphy v. Murphy,* 245 S.E.2d 693 (N.C. 1978), the North Carolina courts seemed to be following the general rule that the intent of the parties is controlling in determining whether a separation agreement is abrogated by the subsequent actions of the parties. However, the court in *Murphy,* relying upon the language in an old case, *State v. Gossett,* 166 S.E. 754 (N.C. 1932), held that sexual relations between a husband and wife after the execution of a separation agreement operates to avoid the agreement, even if the relations are casual, isolated or otherwise. Therefore, *Murphy* imposed a restriction upon the usual rule that it takes something more than mere isolated acts of intercourse to constitute a reconciliation and/or a resumption of cohabitation.

Subsequent to Murphy the North Carolina court had an opportunity to consider a case where the evidence was conflicting as to whether sexual relations took place. In *Hand v. Hand, supra,* the husband s evidence showed that the parties executed an agreement in October 1978; that on or about December 1, 1978, the parties resumed marital relations for one week; that they thereafter lived separate until the period March 8 through March 23, 1979, when they resumed living together and engaged in sexual intercourse. He claimed that some nights' he slept with his wife and on other nights he slept on the couch. The

wife's evidence was that at no time did she sleep with her husband or engage in intercourse. She also testified that she never offered to take the defendant back as her husband. The court held that the parties mutual intent is an essential element in deciding whether the parties were reconciled and resumed cohabitation, where the evidence was conflicting. 264 S.E.2d at 599.

As in *Hand* the evidence in the present case is conflicting. The complainant and cross-defendant claimed that the parties had sexual intercourse in June 1979. Although the defendant and cross-complainant admitted that the parties attempted to have intercourse, she said that they did not do so. The Court cannot say that the Commissioner erred in finding from the evidence that no sexual intercourse had taken place. Having reached this conclusion, it is difficult to see how the ruling in Murphy can be controlling in this case. An attempt to have sexual intercourse is not sufficient to come under the ruling in Murphy. Under the doctrine expressed in Hand the Court must look to other evidence regarding the parties' mutual intent to reconcile occurring after the Separation Agreement was signed on March 22, 1979.

The facts in this case are somewhat bizarre and will not be detailed in this opinion. It is quite clear from the evidence that on August 17, 1978, Mr. Knight left the marital domicile of the parties and disappeared. Thereafter, on three separate occasions, in December 1978, in April 1979 and again in June 1979, although Mr. Knight expressed a desire to return and resume the marriage, his actions thereafter demonstrated a contrary intention. His failure to return home between December 1978 and March 1979 was contrary to what the parties had discussed and agreed upon in December. When the parties entered into the Separation Agreement in March 1979 they were then living separate and apart and apparently intended to continue to do so. On April 17, 1979, a renewed effort to reconcile was aborted when Mr. Knight departed suddenly, leaving his wife a note clearly negating any intention on his part to resume the marriage. And shortly after he left again in June, his intention to never return was made painfully clear.

It is the opinion of the Court that on August 17, 1978, Mr. Knight willfully and without just cause or excuse,

deserted and abandoned his wife. At no time thereafter did he, by his conduct, demonstrate a bona fide intention to effect a reconciliation and resume the marital relationship. Desertion is a continuing offense. When once commenced, it is presumed to continue until the contrary appears. There is nothing in the record from which the Court can conclude that the parties effected a bona fide reconciliation subsequent to the original desertion. Accordingly, the Court finds that the Separation Agreement of March 22, 1979, was not abrogated and remains in full force and effect and binding upon the parties.

Counsel for Mr. Knight asserts that the escalator clause contained in paragraph 5 of the Separation Agreement, by virtue of the holding in *Jacobs v. Jacobs*, 219 Va. 993 (1979), is void as against public policy. Although the Court may not, in the absence of a valid agreement between the parties, enter a decree containing an escalator clause, it may, under the provisions of § 20-109.1 of the Virginia Code, affirm, ratify and incorporate in a decree any such agreement or provision thereof concerning the maintenance of the parties. It is the opinion of the Court that the ruling in *Jacobs* does not go so far as to invalidate a provision for an escalator clause in a valid and binding separation agreement entered into by the parties. The Virginia Supreme Court has held that when a marriage fails, public policy favors a prompt resolution of disputes concerning matters of maintenance and support and property rights. Voluntary, court-approved agreements promote this policy and should be encouraged. See *Morris v. Morris*, 216 Va. 457 (1975). The Court holds, therefore, that the escalator clause is not void as against public policy or rendered invalid by the ruling in *Jacobs*.

In addition to paragraph 5 of the Agreement there are other provisions, executory in nature, that deserve comment by the Court. One of the obvious considerations for Mrs. Knight's entering into the Separation Agreement was her continued eligibility for medical and health care, insurance and survivorship benefits under various Veterans Administration and U. S. Government plans. In paragraphs numbered 6 through 9 and 14 of the Separation Agreement, Mr. Knight agreed not to do anything to change his wife's status with regard to these benefits, including an agreement not to seek a final divorce, which would automatically

divest her of those rights and benefits. The Court is of the opinion that such provisions in the Agreement are valid and binding and not against public policy. In the present posture of this case, however, it would be impossible for the Court to enforce these provisions by including them in a decree. The Court can only ratify and affirm such provisions and leave Mrs. Knight to her legal remedies for any damages she may sustain as the result of the loss of any such rights or benefits.

The question of who gets the divorce and upon which ground is not important. Each is entitled to a final divorce. The defendant and cross-complainant, being clearly without fault, has not, by her conduct, forfeited any of her rights to spousal support from her husband. The Court finds the following:

1. That on August 17, 1978, the complainant and cross-defendant willfully deserted and abandoned the defendant and cross-complainant and that the desertion has continued unabated until the present time;

2. That the defendant and cross-complainant is without fault; and

3. That the parties have lived separate and apart without interruption and without any cohabitation for more than one year.

The Court will request Mr. Evans to prepare a decree including the above findings and awarding the complainant and cross-defendant a divorce *a vinculo matrimonii* from the defendant and cross-complainant on the ground that the parties have lived separate and apart without interruption and without any cohabitation for more than one year. The Separation Agreement between the parties dated March 22, 1979, will be ratified and confirmed by the Court in all of its provisions. Those provisions contained in paragraph 5 relating to the support and maintenance of the defendant and cross-complainant will be ratified and confirmed and made a part of the decree, enforceable under the provisions of § 20-109.1 of the Virginia Code.