LINDA ANTHONY CAMP v. RALPH LAMAR CAMP

No. 8427DC1177

(Filed 2 July 1985)

1. **Husband and Wife § 12— separation agreement—resumption of marital relations**

   The rule that a separation agreement between a husband and wife is terminated insofar as it remains executory on their resumption of the marital relation has not been superseded by G.S. 50-20(d).

**2. Husband and Wife § 12— one year's separation—marital relationship not resumed**

      The trial court's conclusion that plaintiff and defendant had not resumed their marital relationship was supported by findings that defendant had moved into the former marital home for ten days while he was looking for a job; that plaintiff had agreed to allow defendant to stay in the home based on representations that his girlfriend was returning to California and that he was being evicted from a trailer court; plaintiff was in Atlanta for three of the ten days and was involved in a training program from 6:30 a.m. to 12:30 a.m.; defendant did not have sexual relations with plaintiff, sleep in the same bedroom, or move any personal effects other than a change of clothes into the house; defendant was constantly looking for work; defendant never visited friends, attended social events, or ate meals with plaintiff during the ten days; defendant did not represent himself to have resumed the marital relationship with plaintiff; and defendant did not return to the residence after moving out. The findings were supported by the evidence and the issue of intent is an essential element in determining whether the parties have reconciled where the evidence is conflicting. G.S. 50-6, G.S. 50-20, G.S. 50-21.

APPEAL by defendant from *Hamrick, Judge.* Judgment entered 9 July 1984 in District Court, CLEVELAND County. Heard in the Court of Appeals 15 May 1985.

Defendant appeals from a judgment granting plaintiff a divorce after one year's separation and concluding that the parties' separation agreement is valid and enforceable.

*Law Offices of O. Max Gardner, III, by O. Max Gardner, III, for plaintiff appellee.*

*N. Dixon Lackey, Jr., P.A., by N. Dixon Lackey, Jr., for defendant appellant.*

WHICHARD, Judge.

[1, 2] The issue is whether as a matter of law defendant's return to the marital home for a ten-day period constituted a resumption of marital cohabitation which invalidated the parties' separation agreement and barred divorce on the grounds of living separate and apart for one year, G.S. 50-6. We hold that it did not, and we thus affirm.

Plaintiff and defendant were married on 14 April 1960. They separated on 17 January 1983 and signed a separation agreement dated 28 February 1983. The separation agreement purported to resolve all issues regarding marital property, spousal support,

and joint debts and obligations. In it the parties specifically waived their rights to a judicial division of property under the Equitable Distribution Act, G.S. 50-20 and 50-21.

On 1 April 1983 defendant returned to the marital home and remained there until 10 April 1983. Plaintiff testified: that defendant requested a place to stay until he found work; that he kept one change of clothing at the house; that he looked for work constantly; that she was out of town for three of the ten days defendant was there and on the other days was involved in a training program in a nearby town; and that they did not eat together, socialize, sleep in the same bed, or have sexual intercourse. Defendant testified: that he returned home at plaintiff's request; that they slept in the same bed; and that they had sexual intercourse three times.

On 7 February 1984 plaintiff filed for absolute divorce on the grounds of living separate and apart for one year. The court made the following pertinent findings:

6. On or about February 28, 1983, the plaintiff and defendant signed a written Separation Agreement in accordance with North Carolina law.

7. In the Separation Agreement, the plaintiff and the defendant resolved all issues regarding marital property; spousal support; joint debts and obligations; and specifically waived any and all of their respective rights under the North Carolina Equitable Distribution Act.

8. The Separation Agreement constitutes a fair and equitable division of the property of the parties.

9. Subsequent to the separation of the parties, the plaintiff resided at the former marital residence . . . in Shelby, . . . North Carolina. The defendant resided at a trailer park with his girlfriend . . . .

10. At the time of their separation, the defendant was operating a [Peterbilt] truck and trailer in connection with his business as a long-haul truck driver. On or about April 1, 1983, Commercial Credit Corporation repossessed the truck from the defendant thereby leaving him without any means of income.

11. On or about April 1, 1983, the defendant happened to see the plaintiff returning from work at approximately 5:30 o'clock a.m. The defendant was in his 1977 Ford truck and the plaintiff was driving her 1982 Toyota Corona. The defendant motioned for the plaintiff to pull over to the side of the road and the plaintiff complied with this request. The parties then met in the plaintiff's vehicle for several hours and discussed the defendant's financial troubles. The defendant then advised the plaintiff that he needed a place to stay for several days; that his girlfriend planned to return to California; that he was being evicted from the trailer court; and that he had nowhere else to go.

12. The plaintiff, based upon the representations made by the defendant, agreed to allow the defendant to stay in the former marital home . . . until he could find a job. The defendant actually moved into a bedroom in the residence on or about April 1, 1983. On the following day, the plaintiff left the marital home and spent approximately three (3) days in Atlanta, Georgia. When she returned . . . [she] was involved in a training and work program in Gaffney, South Carolina, from approximately 6:30 o'clock a.m. in the morning until 12:30 o'clock [a.m.] at night.

13. The defendant subsequently found employment . . . and left the residence . . . on or about April 10, [1983].

14. During the time that the defendant stayed at the residence . . ., he never had any sexual relations with the plaintiff; he never slept in the same bedroom with the plaintiff; he never moved any of his personal effects other than a change of clothing into the residence; he was constantly looking for work; he never went to any social events with the plaintiff; he never visited any friends with the plaintiff; he never slept with the plaintiff; he did not go anywhere in public with the plaintiff; and he did not otherwise represent himself to have resumed the marital relationship with the plaintiff. During that same period of time, the plaintiff and defendant did not eat any meals together in the residence . . . nor did they eat any meals together in any restaurant or other [similar] establishment outside of the marital home.

15. The defendant has never returned to [the] residence . . . at any time since April 10, [1983].

16. The plaintiff and defendant have not lived together as husband and wife since January 17, 1983.

17. The plaintiff and defendant have not associated among themselves in such a character during the period of their separation as to hold themselves out to the general public as husband and wife.

18. The plaintiff and defendant have waived any right or claim that they might have against the other for any form of spousal support based on the provisions contained in the written Separation Agreement.

19. Both the plaintiff and defendant have expressly waived any claim or demand that they might otherwise have in this action or otherwise for an equitable distribution of the real and personal property [acquired] during the course of their marriage by virtue of the provisions contained in the written Separation Agreement.

Based upon these findings the court concluded, *inter alia,* that

[t]he casual and isolated relationship between the plaintiff and defendant that [occurred] between April 1, 1983, and April 10, 1983, is not sufficient to constitute a resumption of the marital relationship or to constitute a holding out of the plaintiff and defendant to the public as husband and wife.

The court granted plaintiff a divorce under G.S. 50-6 and declared the separation agreement valid and enforceable.

Defendant contends the court erred in failing to find as a matter of law that by spending ten days in the marital home he resumed marital cohabitation with plaintiff. He contends that the court should not have looked behind the parties' actions to determine whether they intended to reconcile.

It is settled law that a separation agreement between a husband and wife is terminated insofar as it remains executory on their resumption of the marital relation. *In re Estate of Adamee,* 291 N.C. 386, 391, 230 S.E. 2d 541, 545 (1976); *Carlton v. Carlton,* 74 N.C. App. 690, 692, 329 S.E. 2d 682, 684 (1985); *Case v.*

*Case,* 73 N.C. App. 76, 79, 325 S.E. 2d 661, 663 (1985). Contrary to plaintiff's contentions, this rule has not been superseded by G.S. 50-20(d) which provides that parties may execute a written agreement governing the distribution of marital property before, during, or after marriage. The Court in *Buffington v. Buffington,* 69 N.C. App. 483, 317 S.E. 2d 97 (1984), cited by plaintiff, did not address whether a *resumption* of cohabitation after parties have separated terminates a separation agreement. It held, rather, that under G.S. 50-20(d) a party may not avoid a separation agreement on the grounds that he or she *continued* to live with the other spouse after the agreement was signed. *Id.* at 488, 317 S.E. 2d at 100. *See also Carlton,* 74 N.C. App. at 694, 329 S.E. 2d at 685 (parties to separation agreements must still be able to cancel their agreements, and the indicia of intent to cancel as developed in common law must still be intact).

It is also settled law that for the purpose of obtaining a divorce under G.S. 50-6 separation may not be predicated upon evidence which shows that during the statutorily prescribed period of separation the parties have cohabited as husband and wife. *Adamee,* 291 N.C. at 391-92, 230 S.E. 2d at 545-46.

Where evidence is conflicting, as here, however, the issue of the parties' mutual intent is an essential element in determining whether the parties were reconciled and resumed cohabitation. *Hand v. Hand,* 46 N.C. App. 82, 87, 264 S.E. 2d 597, 599, *disc. rev. denied,* 300 N.C. 556, 270 S.E. 2d 107 (1980), quoting *Newton v. Williams,* 25 N.C. App. 527, 532, 214 S.E. 2d 285, 288 (1975). Where the court sits as judge and juror, its findings of fact have the effect of a jury verdict and are conclusive on appeal if there is evidence to support them. *Hand,* 46 N.C. App. at 87, 264 S.E. 2d at 599-600. Contradictions and discrepancies are to be resolved by the trier of facts. *Id.,* 246 S.E. 2d at 600.

Here the court resolved discrepancies in favor of plaintiff and found that the parties did not resume the marital relationship. This finding accords with numerous cases where the court has required activity more substantial than that here to find a holding-out as husband and wife. *Ledford v. Ledford,* 49 N.C. App. 226, 232, 271 S.E. 2d 393, 397-98 (1980), citing: *Adamee,* 291 N.C. 386, 230 S.E. 2d 541 (wife moved back into marital domicile and lived with husband for eight months); *Dudley v. Dudley,* 225 N.C. 83, 33

S.E. 2d 489 (1945) (spouses slept in same room together for two and one-half to three years and in adjoining rooms in same house for remainder of alleged five years' separation); *Young v. Young,* 225 N.C. 340, 34 S.E. 2d 154 (1945) (husband in the Navy but parties stayed together whenever he was on leave or stationed near the marital home); *Tuttle v. Tuttle,* 36 N.C. App. 635, 636-37, 244 S.E. 2d 447, 448 (1978) ("interruption of the statutory period should not be found . . . from the mere fact of . . . contact between the parties").

We hold that the court's findings are supported by competent evidence and they, in turn, support the conclusions of law. The order entered thereupon is therefore

Affirmed.

Chief Judge HEDRICK and Judge WEBB concur.