ELIZABETH ANN SCHULTZ v. GERALD FAYE SCHULTZ

No. 911DC694

(Filed 1 September 1992)

**1. Divorce and Separation § 36 (NCI4th) — resumption of marital relations — sufficiency of evidence**

The parties resumed marital relations as a matter of law within the meaning of N.C.G.S. § 52-10.2 (1991), and defendant husband's duty under a consent judgment to pay alimony to plaintiff wife in the future ended at the time of the reconciliation, where the undisputed evidence showed: defendant husband moved back into the former marital home with the wife and stayed there for four months; defendant kept his automobile at the home, lived in the home continuously, moved his belongings into the home, mowed the lawn, and kept his animals at the home; and after defendant's return, plaintiff wife did his laundry, went shopping, dined in restaurants and worked in the yard with him, filed a joint tax return with him, and engaged in sexual relations with defendant for at least two to three months after his return. The parties held themselves out as husband and wife as a matter of law, and the trial

court erred in examining the mutual intent of the parties in determining whether they had resumed marital relations.

**Am Jur 2d, Divorce and Separation § 684.**

**Reconciliation as affecting decree for limited divorce, separation, alimony, separate maintenance, or spousal support. 36 ALR4th 502.**

2. **Divorce and Separation §§ 301, 333 (NCI4th) — reconciliation — past due alimony — civil contempt**

The trial court did not err in holding defendant husband in civil contempt for failure to pay alimony required by a consent judgment up until the time of reconciliation of the parties where the trial court found that defendant's failure to pay was willful and without just cause based upon defendant's stipulation that he had the means and ability to comply with the consent judgment but failed to make alimony payments because he felt plaintiff wife did not deserve the money. Although defendant's obligation to pay future alimony ended at the time of reconciliation, his duty to pay alimony up to the date of reconciliation remained enforceable through the court's contempt power.

**Am Jur 2d, Divorce and Separation §§ 684, 798.**

**Reconciliation as affecting decree for limited divorce, separation, alimony, separate maintenance, or spousal support. 36 ALR4th 502.**

APPEAL by defendant from order entered 31 January 1991 in PASQUOTANK County District Court by *Judge Grafton G. Beaman.* Heard in the Court of Appeals 12 May 1992.

*D. Keith Teague, P.A., by D. Keith Teague, for plaintiff-appellee.*

*Trimpi & Nash, by John G. Trimpi, for defendant-appellant.*

WYNN, Judge.

On 2 March 1984, plaintiff and defendant entered into a consent judgment, which required defendant to transfer the marital home in Elizabeth City to plaintiff, to make the mortgage payments, and to pay plaintiff $400 per month for alimony. Defendant complied with the consent judgment insofar as he conveyed the house to

plaintiff and paid the mortgage payments, but he made only the first payment of $400.

Plaintiff and defendant lived apart from 1984, until about 11 June 1990, when defendant, with plaintiff's consent, moved back into the home. Nearly four months after defendant's return, plaintiff asked him to leave the house, but he refused. Shortly thereafter, defendant filed a motion in the cause to modify the consent judgment, contending that because the parties had reconciled, the judgment was void. Plaintiff responded by moving in the cause and obtaining from the trial court a show cause order for contempt based upon defendant's failure to pay the $400 per month alimony under the consent judgment. From the trial judge's determination that the parties had not reconciled and the finding that defendant was in civil contempt, defendant appeals to this Court.

I.

[1] Appellant assigns error to the trial court's determination that the parties did not reconcile. The trial judge made the following finding of fact:

> 16. Although there was an intent on behalf of the defendant to reconcile, the plaintiff intended to reconcile only on the condition that the defendant would change his actions and personality traits which had originally caused the discord between the parties. The evidence shows that the defendant did not change his behavior, and that there were problems from the day that the defendant returned until the present. There was no mutual intent to establish a permanent reconciliation. Rather, there was a conditional intent on behalf of the plaintiff, and that condition has not been fulfilled. Consequently, no reconciliation occurred.

Based on this finding of fact, the trial judge concluded that "[b]ecause there was no mutual intent to effect a permanent reconciliation, the parties did not reconcile in June of 1990, and are not reconciled at the present time."

The statute which governs this issue is N.C. Gen. Stat. § 52-10.2 (1991),

> "Resumption of marital relations" shall be defined as voluntary renewal of the husband and wife relationship, as shown by the totality of the circumstances. Isolated incidents of sexual

SCHULTZ v. SCHULTZ

[107 N.C. App. 366 (1992)]

intercourse between the parties shall not constitute resumption of marital relations.

*Id.* Section 52-10.2 overruled *Murphy v. Murphy*, 295 N.C. 390, 245 S.E.2d 693 (1978), in which our Supreme Court determined that casual or isolated instances of sexual intercourse between separated spouses constituted a reconciliation. *See Higgins v. Higgins*, 321 N.C. 482, 486, 364 S.E.2d 426, 429, *reh'g denied*, 322 N.C. 116, 367 S.E.2d 911 (1988). The apparent result of the legislature's enactment of section 52-10.2 was to reinstate those cases which did not rely upon the *Murphy* decision.

There are two lines of cases regarding the resumption of marital relations: those which present the question of whether the parties hold themselves out as man and wife as a matter of law, and those involving conflicting evidence such that mutual intent becomes an essential element. *See Hand v. Hand*, 46 N.C. App. 82, 86-87, 264 S.E.2d 597, 599, *disc. review denied*, 300 N.C. 556, 270 S.E.2d 107 (1980) (distinguishing the two lines of cases). In the opinion of this Court, these two lines of cases establish two alternative methods by which a trial court may find that separated spouses have reconciled. The first method, represented by *In re Estate of Adamee*, 291 N.C. 386, 230 S.E.2d 541 (1976), requires the presence of substantial objective indicia of cohabitation as man and wife. When such evidence exists, the trial court may find that the parties have reconciled as a matter of law. The second method, on the other hand, exemplified by the *Hand* decision, involves conflicting evidence; the subjective mutual intent of the parties, therefore, becomes an essential element.

In *Adamee*, our Supreme Court considered whether the parties had held themselves out as man and wife as a matter of law. In that case, Mrs. Adamee submitted affidavits which tended to show that several months after executing a separation agreement and consent judgment, she returned to the marital home. The evidence further showed:

> [T]hey occupied one bedroom and one bed; that in March 1974 Adamee paid to her attorney the balance that she owed him for representing her in the suit against Adamee; that the respective attorneys for Adamee and Mrs. Adamee, who had been appointed commissioners in the consent judgment to sell the parties' jointly owned property at public auction and divide the proceeds equally between them were instructed that the

parties no longer desired a sale, and no sale was made; that Adamee told friends he and his wife had worked out their problems and were planning an early retirement in order to open an antique shop in Alabama; that the month before his death Adamee had instructed a friend in Alabama to proceed with attempts to purchase a certain piece of property for himself and wife jointly; that they had had problems but they had been settled.

*Id.* at 390, 230 S.E.2d at 544-45.

In deciding whether the parties had reconciled, our Supreme Court analogized resumption of marital relations in the context of terminating a separation agreement to the statutory one-year separation requirement as grounds for divorce. *See* N.C. Gen. Stat. § 50-6 (1987) (incorporating the language of N.C. Gen. Stat. § 52-10.2). The *Adamee* Court stated the following:

> Separation as grounds for divorce "implies living apart for the entire period in such manner that those who come in contact with them may see that the husband and wife are not living together. For the purpose of obtaining a divorce under . . . G.S. 50-6, separation may not be predicated upon evidence which shows that during the period the parties have held themselves out as husband and wife living together, nor when the association between them has been of such character as to induce others who observe them to regard them as living together in the ordinary acceptation of that descriptive phrase. . . . Separation means cessation of cohabitation, and cohabitation means living together as man and wife, though not necessarily implying sexual relations. Cohabitation includes other marital responsibilities and duties."

*Adamee*, 291 N.C. at 391-92, 230 S.E.2d at 545-46 (quoting *Young v. Young*, 225 N.C. 340, 344, 34 S.E.2d 154, 157 (1945)). *Accord Newton v. Williams*, 25 N.C. App. 527, 214 S.E.2d 285 (1975). In conclusion, the Court stated that, as a matter of law, separated spouses who resume living together in the marital home and "hold themselves out as man and wife," regardless of whether they also resume sexual relations, have reconciled. *Adamee*, 291 N.C. at 392-93, 230 S.E.2d at 546. *See Hall v. Hall*, 88 N.C. App. 297, 363 S.E.2d 189 (1987) (discussing date of separation).

**SCHULTZ v. SCHULTZ**

[107 N.C. App. 366 (1992)]

The Supreme Court's decision in *Adamee* was applied by this Court in *Tuttle v. Tuttle*, 36 N.C. App. 635, 244 S.E.2d 447 (1978). In *Tuttle*, the evidence showed that defendant visited plaintiff's home during the Christmas holidays to spend time with the children. At no time did the parties have sexual relations. Based in part on *Adamee*, this Court determined that the trial court's finding that the parties had resumed marital relations was erroneous and ordered a new trial. *Id.* at 637-38, 244 S.E.2d at 448. "Where there is no cohabitation nor any intent to resume the marital relationship, interruption of the statutory period should not be found (absent some other extenuating circumstances) from the mere fact of social contact between the parties." *Id.* at 636-37, 244 S.E.2d at 448.

Likewise, in *Ledford v. Ledford*, 49 N.C. App. 226, 271 S.E.2d 393 (1980), the evidence indicated that plaintiff drove around town with defendant on a few occasions; drove to Georgia with defendant on two occasions; approximately twice a month, plaintiff visited defendant at their former marital home and cleaned up and cooked while there; went to restaurants with defendant on three occasions; set up a Christmas tree in the former marital home during December of 1978; attended church with defendant one time and, while leaving church, failed to protest when defendant referred to her as his wife; and slept with defendant on 29 December 1977, but did not engage in sexual activity. *Id.* at 230-31, 271 S.E.2d at 397. This Court concluded that "[i]n light of the nature of these activities and their relative infrequency over an extended period of time, we see no way they could reasonably induce others to regard the parties as living together." *Id.* at 231-32, 271 S.E.2d at 397. *See Dudley v. Dudley*, 225 N.C. 83, 86, 33 S.E.2d 489, 491 (1945) (separation implies living apart such that the neighbors may see that the husband and wife no longer live together).

The second line of cases involves situations in which the facts are in dispute, and the trial court must consider the subjective intent of the parties. In *Hand v. Hand*, 46 N.C. App. 82, 264 S.E.2d 597, *disc. review denied*, 300 N.C. 556, 270 S.E.2d 107 (1980), defendant's evidence showed the following:

The parties executed their separation agreement on 19 October 1978. On or about 1 December 1978, the parties resumed their marital relations for one week. Thereafter, they lived separate and apart until 8 March 1979, when they lived together in their trailer until 23 March 1979. During this period,

they had sexual intercourse, went to church together on one occasion, and went shopping for an automobile. Some nights, he slept with plaintiff; on other nights, he slept on the couch.

*Id.* at 84, 264 S.E.2d at 598. Plaintiff's evidence showed the following:

[A]fter 1 December 1978, she resided with her parents in Winston-Salem until the baby was born. She went back to live in the trailer at defendant's suggestion. Defendant came by to see the baby one day when the baby was sick; he agreed to help with the baby who was up a lot at night. On several occasions, defendant stayed until 11:00 p.m., and it was not too big a change for defendant to sleep there, and defendant moved back into the trailer. Defendant was making his [alimony] payments while he was in the trailer. He slept on the couch every night, and they did not have sexual relations. At no time did she tell defendant she would take him back as her husband. They ate their meals in the trailer. They took turns caring for the child, and on one occasion, they went to church together.

*Id.* at 85, 264 S.E.2d at 598. The Court differentiated *Hand* from *Adamee* by noting that while the language of *Adamee* indicates "that the actual intention of the parties to resume their marital cohabitation is not relevant to determining a resumption of the marital relationship," *id.* at 86, 264 S.E.2d at 599, when the evidence is conflicting, " '[t]he issue of the parties' mutual intent is an essential element in deciding whether the parties were reconciled and resumed cohabitation . . . . *Id.* at 87, 264 S.E.2d at 599 (quoting *Newton v. Williams*, 25 N.C. App. 527, 532, 214 S.E.2d 285, 288 (1975) ). The *Hand* Court recognized and approved the distinction between cases in which the facts are not in dispute and the issue of reconciliation would be determined as a matter of law and those cases in which the facts are in dispute and mutual intent would control. The Court affirmed the trial court's decision because there were disputed facts involved, and the trial judge resolved them in favor of finding no resumption of marital relations. *Id.* at 87, 264 S.E.2d at 600.

Following *Hand*, a question of disputed facts again was presented to this Court in *Camp v. Camp*, 75 N.C. App. 498, 331 S.E.2d 163, *disc. review denied*, 314 N.C. 663, 335 S.E.2d 493 (1985). There, plaintiff testified that defendant moved into the former marital home for ten days while he was looking for a job; plaintiff had

agreed to allow him to stay based on representations that his girlfriend was returning to California and that he was being evicted from his trailer court; plaintiff was in Atlanta for three of the ten days; defendant did not have sexual relations with plaintiff, sleep in the same bedroom, or move any personal effects other than a change of clothes into the house; defendant never visited friends, attended social events, or ate meals with plaintiff during the ten days; defendant did not represent himself to have resumed the marital relationship with plaintiff; and defendant did not return to the residence after moving out. *Id.* at 500, 331 S.E.2d at 164. Defendant, on the other hand, testified that he returned to the former marital home at plaintiff's request, that the parties slept in the same bed, and that they had sexual intercourse three times. *Id.* at 500, 331 S.E.2d at 164. The *Camp* Court stated that because the evidence was conflicting, the issue of mutual intent was an essential element in deciding whether the parties had resumed cohabitation, and the trial court correctly resolved the disputed facts in favor of finding no resumption of marital relations. *Id.* at 503-04, 331 S.E.2d at 166.

In the case at bar, the undisputed evidence presented to the trial court showed, among other things, that on his return, defendant kept his automobile at the residence; lived in the residence continuously; moved his belongings into the house; paid the utility bills and other joint bills; mowed the lawn, and kept his animals at the house. The evidence further showed that after defendant's return, plaintiff did defendant's laundry; went shopping with him; dined at restaurants with him; worked in the yard with him; filed a joint tax return with him and engaged in sexual relations with the defendant about once a week for at least two or three months after his return. We conclude that this case involves a question of law arising from undisputed facts; consequently, it falls within the first line of cases represented by *Adamee*. When the parties objectively have held themselves out as man and wife and the evidence is not conflicting, we need not consider the subjective intent of the parties. Based on the foregoing, we find that the trial court erred in examining the mutual intent of the parties, and we hold, as a matter of law, that the parties resumed marital relations under N.C. Gen. Stat. § 52-10.2.

## II.

[2] Appellant further assigns error to the trial court's order holding him in contempt and ordering him to pay alimony arrearages. Ap-

pellant argues that the order was erroneous because the 2 March 1984 consent judgment was voided when the parties resumed the marital relationship.

Under North Carolina law, resumption of the marital relationship voids the executory portions of an order or separation agreement. *In re Estate of Adamee*, 291 N.C. 386, 230 S.E.2d 541 (1976); *O'Hara v. O'Hara*, 46 N.C. App. 819, 266 S.E.2d 59 (1980); *Hand v. Hand*, 46 N.C. App. 82, 264 S.E.2d 597 (1980). A reconciliation, however, does not invalidate executed provisions of an order or agreement, which this Court has defined as follows:

> An "executory contract" is one in which a party binds himself to do or not to do a particular thing *in the future*. When all future performances have occurred and there is no outstanding promise calling for fulfillment by either party, the contract is no longer "executory," but is "executed." Thus when our cases speak of the "executory provisions" of a separation agreement, they are referring to those provisions which require a spouse to do some future act in accordance with the terms of the agreement . . . .

*Whitt v. Whitt*, 32 N.C. App. 125, 129-30, 230 S.E.2d 793, 796 (1977) (citations omitted). *See Case v. Case*, 73 N.C. App. 76, 325 S.E.2d 661, *disc. review denied*, 313 N.C. 597, 330 S.E.2d 606 (1985). Furthermore, even if a separation follows a reconciliation, the original order or agreement is not revived. *Hand*, 46 N.C. App. at 85, 264 S.E.2d at 599.

In the case at bar, when the parties resumed marital relations, appellant's obligations to pay alimony in the future ceased. *See* 2 Robert E. Lee, *North Carolina Family Law* § 200, at 515 (4th ed. 1980) (Periodic alimony payments "by their very nature remain executory from period to period and may be abrogated upon reconciliation."); *Potts v. Potts*, 24 N.C. App. 673, 211 S.E.2d 815 (1975) (same). His duty under the consent judgment to pay alimony up to the date of reconciliation, however, as an executed portion of the consent judgment, remained enforceable through the court's contempt power. We find that *Harris v. Harris*, 307 N.C. 684, 300 S.E.2d 369 (1983), is persuasive on this point, even though it arose in the context of a Rule 60 motion. The *Harris* Court held that "a court may hold a party in contempt for past violations of an order and at the same time relieve the party of the prospective applicability of that order." *Id.* at 687-88, 300 S.E.2d at 372. We

likewise hold that the trial court may find that a provision of a consent judgment is no longer valid, while holding a party in contempt for past violations of the consent judgment.

As the record indicates, defendant stipulated that from 1984 until the present time, he had the means and ability to comply with the consent judgment, but failed to make payments because he felt plaintiff did not deserve the money. The trial court concluded that defendant's refusal to make the alimony payments was wilful and without just cause. Accordingly, we find that the trial court did not err in holding appellant in civil contempt for any past due alimony. We reverse and remand this case, however, to the trial court with instructions that defendant may purge himself of contempt by paying all arrears which accumulated up until the time the parties reconciled.

The decision of the trial court is,

Reversed in part on finding of no resumption of marital relations and affirmed in part on finding of civil contempt.

Judges LEWIS and WALKER concur.