MARY ANN CRADDOCK, Plaintiff v. ABRAM P. CRADDOCK, IV, Defendant

No. COA07-899

(Filed 19 February 2008)

**Divorce— breach of support agreement—cohabitation—conflicting evidence—summary judgment—subjective intent**

The trial court erred by granting summary judgment in favor of plaintiff wife in an action for breach of a family support agreement where defendant husband cited plaintiff's cohabitation as

CRADDOCK v. CRADDOCK

[188 N.C. App. 806 (2008)]

an affirmative defense because viewing the evidence in the light most favorable to defendant husband revealed there was a genuine issue of material fact regarding plaintiff's alleged cohabitation as defined under N.C.G.S. § 50-16.9 including evidence that: (1) plaintiff and a male companion maintained a mutually exclusive relationship from September 2002 until the time of the summary judgment hearing nearly five years later; (2) during their relationship, plaintiff and her companion went out to eat dinner or cooked meals together on the weekends, went to the movies, traveled together on overnight vacations, spent holidays together, exchanged gifts, and engaged in monogamous sexual activity; and (3) conflicting evidence was presented regarding how many times per week the companion stayed overnight at plaintiff's residence, whether the companion permanently kept his clothes at plaintiff's residence, and to what extent the companion used plaintiff's residence as his base of operations for his real estate appraisal business. The parties are entitled to present evidence regarding subjective intent when evidence of cohabitation is conflicting, and summary judgment is rarely proper when a state of mind such as intent or knowledge is at issue.

Appeal by defendant from judgment entered 13 April 2007 by Judge Ben S. Thalheimer in Mecklenburg County District Court. Heard in the Court of Appeals 17 January 2008.

*Katten, Muchin, Rosenman, L.L.P., by Amy E. Simpson, for plaintiff-appellee.*

*Cassptevens, Hanner, Gunter Riopel & Wofford, P.A., by Nelson M. Casstevens, Jr., for defendant-appellant.*

TYSON, Judge.

Abram P. Craddock, IV ("defendant") appeals from an order entered, which granted Mary Ann Craddock's ("plaintiff") motion for summary judgment. We reverse and remand.

## I. Background

Plaintiff and defendant were married on 27 December 1975 and legally separated in October 2001. On 9 July 2002, the parties executed an agreement titled "Contract of Separation, Property Settlement, Alimony, Child Custody, and Child Support Agreement" ("agreement") in connection with the parties' separation and subsequent divorce. Section 29 of the agreement states:

Husband shall pay to Wife as family support the sum of $7,000.00 per month. The obligation of Husband to pay family support to Wife of $7,000.00 per month shall continue until the occurrence of the first of the following contingencies:

a.  Death of Wife;

b.  Death of Husband;

c.  Remarriage of Wife;

d.  *Cohabitation of Wife as defined by N.C.G.S. § 50-16.9(b);*

e.  Disability of Husband . . .;

f.  The arrival of November 1, 2007.

(Emphasis supplied).

Defendant paid all sums due pursuant to the agreement until March 2004 when defendant reduced the payment amount due to financial difficulties. Plaintiff and defendant agreed that defendant would pay $5,500.00 per month for "a few months" and defendant would resume paying plaintiff the full amount thereafter. The remaining balance was due to be paid upon the expiration of the written agreement. Defendant paid plaintiff $5,500.00 per month for several months. When plaintiff requested defendant resume paying the amount set out in the agreement, defendant refused and stated, "the only way you are going to get it is to take me to Court."

On 7 February 2006, plaintiff filed a complaint alleging defendant had breached section 29 of the agreement. On 10 April 2006, defendant filed his answer asserting as an affirmative defense that plaintiff had cohabited, as defined in N.C. Gen. Stat. § 50-16.9, with Andrew Picarsic ("Picarsic"). Both parties filed motions for summary judgment. Based upon the affidavits and depositions presented, the trial court found plaintiff did not cohabitate with Picarsic and entered an order that: (1) granted plaintiff's motion for summary judgment and (2) denied defendant's motion for summary judgment. Defendant was ordered to bring current all of his past due support payments in arrears totaling $131,000.00 within thirty days of the execution of the order. Defendant appeals.

## II.  Issue

Defendant argues the trial court erred by granting plaintiff's motion for summary judgment.

CRADDOCK v. CRADDOCK

[188 N.C. App. 806 (2008)]

### III.  Summary Judgment

Defendant argues the trial court erred in granting plaintiff's motion for summary judgment where the evidence tended to show genuine issues of material fact existed regarding plaintiff's alleged cohabitation, as defined in N.C. Gen. Stat. § 50-16.9, with Picarsic. We agree.

### A.  Standard of Review

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [a] party is entitled to a judgment as a matter of law. On appeal of a trial court's allowance of a motion for summary judgment, we consider whether, on the basis of materials supplied to the trial court, there was a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. Evidence presented by the parties is viewed in the light most favorable to the non-movant.

*Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003) (internal citation and quotation omitted). "Summary judgment may not be used . . . to resolve factual disputes which are material to the disposition of the action." *Robertson v. Hartman*, 90 N.C. App. 250, 252, 368 S.E.2d 199, 200 (1988) (citation omitted).

### B.  Analysis

N.C. Gen. Stat. § 50-16.9 (b) (2005) states, in relevant part:

As used in this subsection, *cohabitation means the act of two adults dwelling together continuously and habitually in a private heterosexual relationship, even if this relationship is not solemnized by marriage*, or a private homosexual relationship. Cohabitation is evidenced by *the voluntary mutual assumption of those marital rights, duties, and obligations which are usually manifested by married people, and which include, but are not necessarily dependent on, sexual relations*. Nothing in this section shall be construed to make lawful conduct which is made unlawful by other statutes.

(Emphasis supplied).

The legislative policy and goals of this statute was articulated in *Lee's North Carolina Family Law* treatise:

The statute reflects several of the goals of the "live-in lover statutes," terminating alimony in relationships that probably have an economic impact, preventing a recipient from avoiding in bad faith the termination that would occur at remarriage, but not the goal of imposing some kind of sexual fidelity on the recipient as the condition of continued alimony. The first sentence reflects the goal of terminating alimony in a relationship that probably has an economic impact. "Continuous and habitual" connotes a relationship of some duration and suggests that the relationship must be exclusive and monogamous as well. All of these factors increase the likelihood that the relationship has an economic impact on the recipient spouse.

2 Suzanne Reynolds, *Lee's North Carolina Family Law* § 9.85, at 493-94 (5th ed. 1999).

In *Rehm v. Rehm*, this Court analyzed cohabitation under a separation agreement that provided for the termination of alimony upon cohabitation by the wife with a third party. 104 N.C. App. 490, 492, 409 S.E.2d 723, 724 (1991). Plaintiff argues *Rehm* is not controlling because it was decided four years prior to the amendment to N.C. Gen. Stat. § 50-16.9, which statutorily defined cohabitation. However, *Rehm* is the first North Carolina case that specifically defined cohabitation as "[t]he mutual assumption of those marital rights, duties and obligations which are usually manifested by married people, including but not necessarily dependent on sexual relations." *Id.* at 493, 409 S.E.2d at 724 (quoting *Black's Law Dictionary* 236 (5th ed. 1979)). *Rehm's* analysis is particularly relevant because the standard defining cohabitation enunciated in that case was subsequently adopted by our Legislature in N.C. Gen. Stat. § 50-16.9 (1995).

In *Rehm*, this Court upheld the trial court's finding of cohabitation and order terminating the husband's obligation to pay alimony based upon evidence that tended to show: (1) the wife maintained an exclusive relationship with a third party for approximately eleven months; (2) the third party stayed overnight at the wife's residence as many as five times per week; (3) the third party brought clothes to the wife's residence; (4) the wife and third party took trips together; (5) the third party kissed the wife goodbye in the mornings; and (6) the wife and third party engaged in monogamous sexual activity. *Id.* at 492-93, 409 S.E.2d at 724. The trial court also found that the wife and third party maintained separate residences. *Id.* at 493, 409 S.E.2d 724. This Court held sufficient evidence in the record supported the trial

CRADDOCK v. CRADDOCK

[188 N.C. App. 806 (2008)]

court's conclusion that the wife had cohabited with a third party. *Id.* at 494, 409 S.E.2d at 725.

The meaning of the cohabitation statute was more recently interpreted in *Oakley v. Oakley*, 165 N.C. App. 859, 599 S.E.2d 925 (2004). In *Oakley*, this Court reviewed prior cases addressing whether separated spouses had resumed their marital relationship and stated their analyses were instructive in determining the meaning of "marital rights, duties, and obligations" under N.C. Gen. Stat. § 50-16.9. 165 N.C. App. at 862, 599 S.E.2d at 928; *See also Rehm*, 104 N.C. App. at 493, 409 S.E.2d at 724.

In *Oakley*, this Court articulated two methods to determine whether a separated spouse had cohabited with a third party by voluntarily and mutually assuming "the marital rights, duties, and obligations . . . usually manifested by married people." *Id.* This Court stated:

> Our courts use one of two methods to determine whether the parties have resumed their marital relationship, depending on whether the parties present conflicting evidence about the relationship. See *Schultz v. Schultz*, 107 N.C. App. 366, 420 S.E.2d 186 (1992), *disc. rev. denied*, 333 N.C. 347, 426 S.E.2d 710 (1993). In the first test, developed from *Adamee*, where there is objective evidence, that is not conflicting, that the parties have held themselves out as man and wife, the court does not consider the subjective intent of the parties. *Schultz*, 107 N.C. App. at 373, 420 S.E.2d at 190. The other test grew out of the opinion in *Hand v. Hand*, 46 N.C. App. 82, 264 S.E.2d 597, *disc. rev. denied*, 300 N.C. 556, 270 S.E.2d 107 (1980), and addresses cases *where the objective evidence of cohabitation is conflicting and thus allows for an evaluation of the parties' subjective intent. Schultz*, 107 N.C. App. at 371, 420 S.E.2d at 189.

*Id.* at 863, 599 S.E.2d at 928 (emphasis supplied).

We find the second method stated in *Hand* and reiterated in *Oakley* to be applicable to the facts at bar. 46 N.C. App. 82, 264 S.E.2d 597; 165 N.C. App. at 863, 599 S.E.2d at 928. Here, the undisputed facts show that plaintiff and Picarsic maintained a mutually exclusive relationship from September 2002 until the time of the summary judgment hearing, nearly five years later. During their relationship, plaintiff and Picarsic went out to eat dinner or cooked meals together on the weekends, went to movies, traveled together on overnight vaca-

CRADDOCK v. CRADDOCK

[188 N.C. App. 806 (2008)]

tions, spent holidays together, exchanged gifts, and engaged in monogamous sexual activity.

Some evidence tended to show plaintiff and Picarsic maintained two separate residences. Plaintiff lived on 3142 Ethereal Lane, Charlotte, North Carolina and asserted she had paid all costs and expenses associated with this residence. Picarsic asserted that he lived with his brother, Lawrence Picarsic, at 2207 Hearthstone Lane, Gastonia, North Carolina and had paid all of the costs and expenses associated with his residence. Plaintiff and Picarsic did not share any financial assets, accounts or expenses. Plaintiff conceded that: (1) she and Picarsic worked together on real estate appraisals at plaintiff's residence during the day and (2) Picarsic received mail related to his appraisal business at plaintiff's residence and used plaintiff's address as his business address on his website.

Conflicting evidence was presented regarding: (1) how many times per week Picarsic stayed overnight at plaintiff's residence; (2) whether Picarsic permanently kept his clothes at plaintiff's residence; and (3) to what extent Picarsic used plaintiff's residence as his "base of operations" for his real estate appraisal business. Where evidence of cohabitation is conflicting, the trial court must evaluate the parties' subjective intent. *Oakley*, 165 N.C. App. at 863, 599 S.E.2d at 928 (citing *Schultz*, 107 N.C. App. at 371, 420 S.E.2d at 189; *Hand*, 46 N.C. App. at 82, 264 S.E.2d at 597).

"Summary judgment is rarely proper when a state of mind such as intent or knowledge is at issue." *Valdese Gen. Hosp., Inc. v. Burns*, 79 N.C. App. 163, 165, 339 S.E.2d 23, 25 (1986). This Court has also stated, "[g]enerally, summary judgment is inappropriate when issues such as motive, intent, and other subjective feelings and reactions are material, or when the evidence presented is subject to conflicting interpretations, or reasonable men might differ as to its significance." *Smith v. Currie*, 40 N.C. App. 739, 742, 253 S.E.2d 645, 647, *disc. rev. denied*, 297 N.C. 612, 257 S.E.2d 219 (1979) (citation and quotations omitted). Where evidence of cohabitation is conflicting, the parties are entitled to present evidence regarding subjective intent. *Hand*, 46 N.C. App. at 87, 264 S.E.2d at 599.

Based on this Court's precedents in *Rhem* and *Oakley*, we hold the trial court erred by granting summary judgment in favor of plaintiff. Viewing the evidence in the light most favorable to defendant, genuine issues of material fact exist on whether plaintiff and Picarsic engaged in cohabitation as defined in N.C. Gen. Stat. § 50-16.9. *Summey*, 357 N.C. at 496, 586 S.E.2d at 249.

CRADDOCK v. CRADDOCK

[188 N.C. App. 806 (2008)]

The summary judgment order in this case contains 32 findings of fact and 7 conclusions of law. Some of the findings of fact set forth clearly undisputed facts, while others address issues upon which evidence is conflicting. We reiterate the warning of this Court, from *Capps v. City of Raleigh*:

> [W]e feel compelled again to point out that it is not a part of the function of the court on a motion for summary judgment to make findings of fact and conclusions of law. As we have pointed out on previous occasions, finding the facts in a judgment entered on a motion for summary judgment presupposes that the facts are in dispute. . . . [T]he Supreme Court and this Court have emphasized in numerous opinions that upon a motion for summary judgment it is no part of the court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried. Despite our frequent reminders, we find that some of the trial judges continue to treat the motion for summary judgment as a hearing upon the merits before the court without a jury where the judge becomes the trier of the facts. Granted, in rare situations it can be helpful for the trial court to set out the *undisputed* facts which form the basis for his judgment. When that appears helpful or necessary, the court should let the judgment show that the facts set out therein are the undisputed facts.

35 N.C. App. 290, 292, 241 S.E.2d 527, 528-29 (1978) (emphasis original) (internal citations and quotations omitted). The *Capps* reminder still holds true, as the trial judge may not assume the role of trier of fact too soon. *Id.* We reverse the trial court's order and remand for a trial on the merits.

## IV. Conclusion

Conflicting evidence raised genuine issues of material fact on whether plaintiff cohabited with Picarsic as defined in N.C. Gen. Stat. § 50-16.9 in violation of the parties' agreement. Viewing the evidence in the light most favorable to defendant, the trial court erred when it granted plaintiff's motion for summary judgment. *Summey*, 357 N.C. at 496, 586 S.E.2d at 249. The trial court's order is reversed and this cause is remanded for trial.

Reversed and Remanded.

Judges GEER and STROUD concur.