ANGELA IDOL FAULKENBURY, Plaintiff
v.
MICHAEL ANDREW FAULKENBURY, Defendant
No. COA08-682
Court of Appeals of North Carolina.
Filed February 17, 2009
Lea, Rhine, Rosbrugh & Chleborowicz by James W. Lea, III, for plaintiff-appellee.
Pennington & Smith, PLLC, by Ralph S. Pennington and Kristy J. Jackson, for defendant-appellant.
CALABRIA, Judge.
Michael Andrew Faulkenbury ("defendant") appeals the trial court's order denying his motion to terminate alimony. We affirm.
Angela Idol Faulkenbury ("plaintiff") and defendant were married on 30 September 1984 and separated on 1 November 2001. On 29 January 2002, plaintiff filed a complaint seeking alimony and other claims unrelated to this appeal. On 14 July 2003, the trial court ordered defendant to pay plaintiff alimony in the amount of $5,100.00 per month for ten years or until the death of either party, plaintiff's remarriage, or "plaintiff's cohabitation." In 2005, plaintiff began dating Adam Robbins ("Robbins"). On 5 November 2007, defendant moved to terminate plaintiff's alimony on the grounds that plaintiff cohabited with Robbins.
On 24 January 2008, the trial court heard evidence on defendant's motion and found that Robbins and plaintiff began dating in 2005 and dated intermittently for two years. During their dating relationship, Robbins spent overnights at plaintiff's residence, but did not do so continuously or on a consistent basis. Robbins maintained a separate residence during their relationship and did not assist in any significant way with plaintiff's household expenses. On 6 March 2008 the trial court entered an order denying defendant's motion to terminate alimony. Defendant appeals.

I. Standard of Review
The standard of review on appeal when a trial court sits without a jury is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. Oakley v. Oakley, 165 N.C. App. 859, 861, 599 S.E.2d 925, 927 (2004) (quotation omitted). "Where the trial judge sits as judge and juror, his findings of fact have the force and effect of a verdict by a jury and are conclusive on appeal if there is evidence to support them, even though the evidence might sustain a finding to the contrary[.]" Hand v. Hand, 46 N.C. App. 82, 87, 264 S.E.2d 597, 599-600 (1980) (citation and quotation marks omitted).

II. Cohabitation
Defendant contends the trial court erred in denying his motion to terminate alimony because the objective evidence supported a conclusion that plaintiff and Robbins engaged in cohabitation. We disagree.
Alimony orders may be modified pursuant to N.C. Gen. Stat. § 50-16.9 (2007). Alimony orders shall terminate if the dependent spouse engages in cohabitation as defined by the statute. Id. The statute provides:
(b) If a dependent spouse who is receiving post separation support or alimony from a supporting spouse under a judgment or order of a court of this State remarries or engages in cohabitation, the post separation support or alimony shall terminate. Post separation support or alimony shall terminate upon the death of either the supporting or the dependent spouse.
As used in this subsection, cohabitation means the act of two adults dwelling together continuously and habitually in a private heterosexual relationship, even if this relationship is not solemnized by marriage, or a private homosexual relationship. Cohabitation is evidenced by the voluntary mutual assumption of those marital rights, duties, and obligations which are usually manifested by married people, and which include, but are not necessarily dependent on, sexual relations. Nothing in this section shall be construed to make lawful conduct which is made unlawful by other statutes.
N.C. Gen. Stat. § 50-16.9(b) (2007).
The statute reflects several of the goals of the "live-in lover statutes," terminating alimony in relationships that probably have an economic impact, preventing a recipient from avoiding in bad faith the termination that would occur at remarriage, but not the goal of imposing some kind of sexual fidelity on the recipient as the condition of continued alimony.
Craddock v. Craddock, IV, ___ N.C. App. ___, ___, 656 S.E.2d 716, 719 (2008) (quoting 2 Suzanne Reynolds, Lee's North Carolina Family Law § 9.85, at 493-94 (5th ed. 1999)). "In order for the trial court to conclude that cohabitation has occurred, it should make findings that the type of acts included in the statute were present." Long v. Long, 160 N.C. App. 664, 667, 588 S.E.2d 1, 3 (2003). To support a conclusion of cohabitation, there must be evidence that the party engaged in voluntary mutual assumption of those marital rights, duties and obligations usually manifested by married people and which include but are not necessarily dependent upon sexual relations. Oakley, 165 N.C. App. at 862, 599 S.E.2d at 927-28 (quotation omitted).
To determine whether the parties cohabited, our courts' review depends on whether or not the parties present conflicting evidence about the relationship. Oakley, 165 N.C. App. at 863, 599 S.E.2d at 928 (citing Schultz v. Schultz, 107 N.C. App. 366, 420 S.E.2d 186 (1992)). Where there is objective evidence, that is not conflicting, showing the parties held themselves out as husband and wife, the court does not consider the subjective intent of the parties. Id. If the objective evidence of cohabitation is conflicting, the court considers the subjective intent of the parties. Id.
In Oakley, this Court examined whether overnight trips, dates, spending the night at plaintiff's home, and the parties' intimate relationship were sufficient evidence of cohabitation as defined in the statute. Because the "defendant in [Oakley] presented no evidence of activities beyond plaintiff's and Smith's sexual relationship and their occasional trips and dates," this Court concluded the trial court did not err in denying the motion to terminate alimony on the basis of cohabitation. Id. at 863, 599 S.E.2d at 928. The Oakley court concluded an examination of subjective intent was not necessary since the only conflict in the objective evidence was the number of nights per week plaintiff and Smith spent together. Id.
In Schultz v. Schultz, 107 N.C. App. 366, 420 S.E.2d 186 (1992), this Court found resumption of the marital relationship based on evidence "that the former husband kept an automobile at the common residence, lived in the residence continuously, moved his belongings to the residence, paid the utility bills and mowed the lawn." Oakley, 165 N.C. App. at 863, 599 S.E.2d at 928 (citing Schultz, 107 N.C. App. at 373, 420 S.E.2d 190). Evidence was also presented that "the former wife did the laundry, worked in the yard with the former husband and engaged in sexual relations with him." Id.
In the instant case, the trial court made the following findings of fact:
7. At sometime between the end of 2005 and 2006, Adam Robbins moved into a room in the Plaintiff's home at the Plaintiff's request. The Plaintiff's son was addicted to drugs and had returned to her home for detoxification. The Plaintiff requested that Mr. Robbins reside in her home in order to assist her with her son's detoxification. Mr. Robbins resided in his own room in the home for approximately one month. Once the emergency was over, he departed the Plaintiff's residence prior to the departure of Plaintiff's son.
8. Since that time, the Plaintiff and Adam Robbins have engaged in a romantic relationship for the past several years although for periods of time they have stopped dating each other for various reasons. Over this two year period of time, Adam Robbins has spent overnights at the Plaintiff's home but has not done so continuously and habitually and on a consistent basis.
9. During this period of time, the parties have not lived together as husband and wife or held themselves out to the public as husband and wife or assumed any of the usual duties and obligations of a married couple.
10. Except for the aforementioned period of time, Adam Robbins has consistently maintained a separate residence where he has received his mail, bills, paychecks and keeps all of his belongings. Adam Robbins has not assisted in any significant way with bills or expenses at the home of the Plaintiff.
11. From February 4, 2005 to January 31, 2006, the Plaintiff lived at Sanderling Place in a lease that was extended to August 2006. This lease was solely in the Plaintiff's name and all payments were made by her. Since August 2006, she has resided at 7105 Long Boat Circle and the lease to this residence is solely in her name and all payments have been made solely by her.
12. Since 2004 all bills such as trash collection, water, sewer, car payments, car insurance, utilities, cable, energy, credit cards and cellular phone have been made solely by the Plaintiff out of an account maintained solely in her name. Adam Robbins' name does not appear on any of the accounts belonging to the Plaintiff.
13. The Plaintiff's driver's license indicates that her current residence is 7105 Long Boat Circle and Adam Robbins' driver's license he obtained in January 2007 lists his address on Cove Drive.
14. The parties rarely attend public events together and do not go to church together.
15. Each party spends sporadic but significant time with the other but they also have their own lives separate and apart from the other.
Defendant argues findings of fact numbers 8, 9, 10, 13, 14, and 15 are not supported by competent evidence. Defendant also argues findings of fact numbers 8 and 9 should be considered conclusions of law. Defendant contends the objective evidence supports a finding that Robbins and plaintiff cohabited.
We examine whether these findings of fact are supported by competent evidence, and whether the findings of fact support the conclusions of law. Oakley, 165 N.C. App. at 861, 599 S.E.2d at 927.
Plaintiff testified there was a period of time Robbins spent three weeks at her home to assist her in caring for her son, who stayed with the plaintiff while detoxifying as a result of his heroin addiction. Robbins slept in a separate bedroom and compensated plaintiff for his living expenses during that time. Plaintiff also testified Robbins stayed overnight at her home five days a week at the most, had a key to the house, and kept a few items of clothing at her home while his washing machine was broken. Plaintiff testified Robbins' name was not on any of her accounts, nor did he buy groceries for her, or mow the lawn. Plaintiff testified although Robbins had a few shirts and some textbooks at her home, he lived in a separate apartment with his parents. Robbins testified he spent the night at plaintiff's home "sporadic[ally]," the longest stretch being a week at a time. Robbins testified he kept his clothes and toothbrush in a bag that he would bring with him when he spent the night. Robbins testified he listed his parents' address as his address on his employment records, pistol permit, car loan statement, bills, and pay stubs. Robbins did not contribute financially to plaintiff's living expenses.
Defendant presented testimony from a private investigator indicating Robbins spent the night at plaintiff's home from 27 July 2007 until 29 July 2007, from 15 August 2007 until 17 August 2007, and on 29 August 2007.
Here, as in Oakley, an examination of subjective intent of the parties was unnecessary since the objective evidence concerning plaintiff's and Robbins' dating relationship was non-conflicting. Oakley, 165 N.C. App. at 863, 599 S.E.2d at 928 (citing Schultz, 107 N.C. App. at 373, 420 S.E.2d at 190).
The objective evidence presented did not show that Robbins and plaintiff lived together "continuously and habitually" and "engaged in voluntary mutual assumption of those marital rights, duties and obligations usually manifested by married people." Oakley, 165 N.C. App. at 862, 599 S.E.2d at 927-28 (quotation omitted). Robbins' overnight visits were "sporadic." With the exception of the time Robbins stayed with plaintiff to assist her with her son, Robbins did not move his belongings into plaintiff's home or contribute financially to plaintiff's living expenses. Defendant also argues the trial court erred in failing to make findings of fact concerning evidence presented that Robbins listed plaintiff's address as the address on his driver's license in 2006 and that he and plaintiff attended family cookouts together. We disagree.
The trial court need not recite in its order every evidentiary fact presented at hearing, but only must make specific findings on the ultimate facts established by the evidence, admissions, and stipulations that are determinative of the questions raised in the action and essential to support the conclusions of law reached.
Mitchell v. Lowery, 90 N.C. App. 177, 184, 368 S.E.2d 7, 11 (1988) (citing Quick v. Quick, 305 N.C. 446, 452, 290 S.E.2d 653, 658 (1982)). "[C]redibility, contradictions, and discrepancies [in the evidence] are all matters to be resolved by the trier of the facts." Laughter v. Lambert, 11 N.C. App. 133, 137, 180 S.E.2d 450, 452 (1971).
We conclude the trial court's findings of fact were sufficient to determine the issue of whether plaintiff and Robbins engaged in cohabitation as defined by N.C. Gen. Stat. § 50-16.9(b) and relevant case law. After careful review of the record, exhibits, and transcript, we conclude the trial court's findings were supported by competent evidence. The conclusion of law that Robbins and plaintiff did not live continuously and habitually together or voluntarily assumed the marital rights, duties and obligations usually manifested by married people is supported by those findings.
Affirmed.
Judges STEELMAN and STROUD concur.
Report per Rule 30(e).